**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jimmie JONES, Defendant-Appellant.**

**No. 74–1768.**

United States Court of Appeals, Ninth Circuit.

Feb. 18, 1975.

348

Martha Goldin (argued), of Saltzman & Goldin, Hollywood, Cal., for defendant-appellant.

Gregory C. Glynn, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and SCHWARTZ,* District Judge.

## OPINION

SCHWARTZ, District Judge:

Defendant Jones appeals from a judgment of conviction entered on a jury verdict for the armed robbery of a federal savings and loan association using a dangerous weapon in violation of 18 U.S.C. § 2113(a), (d). We affirm the conviction.

The factual background of the case is essential to consideration of appellant's contentions. At about 1:00 p. m. on Oc-

* The Honorable Edward J. Schwartz, Judge of the United States District Court for the Southern District of California, sitting by designation.

tober 30, 1973, two black men entered the West Los Angeles branch of First Federal Savings and Loan Association. They approached the teller's window where the taller of the two men said, "We would like to make a withdrawal account." According to teller Cohen the shorter of the two men then raised a gun and said, "This is a robbery. Give me all of your money." According to the other teller, Mrs. Gamboa, the taller man stepped forward and said, "Okay. This is a holdup. This is a robbery."

The taller man then approached teller Cohen and handed her a paper bag, saying, "Give me your bills. No coin, just paper." She thereupon filled the bag with money. The taller man next approached teller Gamboa and gave her a bag stating, "Just paper, no coin." She filled the bag with money, including "marked money" pulled from a metallic clip which immediately activated the alarm and a surveillance camera. While the taller man was waiting for the money to be put into the bag, the shorter man pointed the gun at the tellers saying, "Hurry up, hurry up." The shorter man also attempted to cover his face with his left forearm.

After the bags were filled with money, the taller man took them and walked briskly out the back door of the bank accompanied by the shorter man. Each teller testified that she gave the men the money because she was frightened and intimidated. Each also testified that she got a good look at the shorter man's face before he covered it with his arm. They both identified him as defendant Jones.[1] A subsequent audit by the bank showed that teller Gamboa lost $878.00 as a result of the robbery and that teller Cohen lost $1,539.00 for a total loss of $2,417.00.

Appellant first contends that conflict between him and his court appointed attorney during trial constituted a denial of effective assistance of counsel in violation of rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. The conflict centered on the question of whether to call co-defendant Powell to the stand. Appellant's trial attorney was opposed to calling him; appellant favored it. From this disagreement, appellant argues that trial counsel did not properly investigate or prepare what might have been a crucial defense in the case.

If appellant is broadly asserting that his trial counsel was incompetent, although this is not clear from his argument, then we think such a contention is without merit. A thorough review of the record demonstrates that trial counsel performed his work diligently and competently and by no means were the proceedings rendered a "farce or mockery of justice." Grove v. Wilson, 368 F.2d 414, 416 (9th Cir. 1966).[2]

However, it appears that the more precise question raised by appellant's first contention is whether the court's refusal to grant the requested substitution of attorney during the trial violated appellant's right to effective counsel. In Brown v. Craven, 424 F.2d 1166 (9th Cir. 1970), the court held that the conflict between the defendant and his attorney was exacerbated enough to deprive him of effective assistance of counsel. In doing so, the court stated:

> "We think, however, that to compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." Id. at 1170.

As the court further explained, the error occurred when the state court did not "take the necessary time and conduct

---

1. The taller man, co-defendant Powell, later admitted his appearance in the bank's surveillance photographs.

2. Even applying the standard adopted by the District of Columbia Circuit and urged upon us by appellant's counsel that "a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate", it appears that trial counsel capably performed his duties. United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1202 (1973).

such necessary inquiry as might have eased Brown's dissatisfaction, distrust and concern." Id.

With *Brown* as the appropriate standard, a review of what transpired in the trial court demonstrates that appellant's contention must fail. Toward the end of the government's case, trial counsel informed the court of the conflict that had developed between him and appellant regarding Powell's proposed testimony.[3] The court granted counsel time to further discuss the issue with appellant and to interview co-defendant Powell. Despite this additional time, no agreement was reached. Thereafter, following an overnight recess, the trial judge directed that Powell be called outside the presence of the jury and asked the questions desired by appellant.

At the hearing, Powell testified on direct examination that he robbed the bank with two "dudes", one named Jimmy. However, Powell could not say for sure "one way or the other" whether appellant was the Jimmy with whom he robbed the bank.

On cross-examination, Powell admitted he had stated to the F.B.I. at the time of his arrest that he met Jimmy at 59th and Compton, the local hangout where you "score". Jimmy recruited another man named Hank and the three went to West Los Angeles in Jimmy's brown car. After driving around for a few hours, Jimmy suggested that the three rob the bank. Powell was as close as two feet to Jimmy, looked at his face yet still maintained that he could not say with certainty that appellant was the same Jimmy. Furthermore, Powell reviewed surveillance photographs taken at the bank and identified himself as the taller of the two men. Jimmy, according to Powell, was the man behind him in the pictures, who was carrying a gun. After this testimony, the trial judge allowed appellant himself to ask questions of Powell on redirect. Finally, government counsel advised the court that if Powell

were called, prosecution planned to offer photographs of appellant's car, a brown Buick with a license plate "Jimmy" registered to Jones.

At the end of the special hearing, the judge concluded that defense counsel should be allowed to continue his case as planned—without calling Powell as a witness. That decision appears to us to be a sound one and made in appellant's best interest. First, Powell's testimony might have brought in possibly prejudicial evidence regarding heroin usage. Second, Powell's testimony would have established that he did in fact rob the bank with someone named "Jimmy" who owned a brown car. Third, the government would have brought in evidence that appellant's car was brown with special "Jimmy" license plates. Moreover, it is likely that the jury would have found it highly implausible that Powell could have spent so many hours with a man, in such close proximity, rob a bank with him, yet still be unable to conclude whether appellant was or was not the same man. It should also be noted that after the above hearing and some further discussion, the trial judge specifically asked appellant whether he nevertheless wished to call Powell as a witness against his attorney's advice, and he responded in the negative.

■ From the record, it is manifest that the trial court conducted an adequate and fair hearing into the substance of appellant's conflict with his attorney. The judge's conclusion that "this [Powell's] testimony is not such that it would be overwhelmingly in favor of the defendant" appears, in all candor, generous. The court's refusal to substitute attorneys at the close of the government's case was a proper exercise of discretion under the circumstances. There was no irreconcilable conflict within the meaning of *Brown,* and appellant was not deprived of his right to effective counsel. Furthermore, we are in agreement that there is " . . . no

---

**3.** Indeed, although appellant indicated at arraignment that he might desire to obtain his own attorney, *no objection was made in the* court's presence to his appointed counsel until the *close* of the government's case.

constitutional rationale for placing trial courts in a position to be whipsawed by defendants clever enough to record an equivocal request to proceed without counsel in the expectation of a guaranteed error no matter which way the court rules." Cf. Meeks v. Craven, 482 F.2d 465 (9th Cir. 1973).

Appellant next contends that his in-court identification was so tainted as to be violative of due process of law. He argues that the testimony of two of the three eyewitnesses was tainted by the photo-identification process which followed the robbery. Of the six photos shown to the identifying witnesses Gamboa and Johnson, five had written on the bottom "California State Prison". Appellant further asserts that these same five photos were profiles of similar size whereas the appellant's photo was a front view shot with the head size larger than the other five. Furthermore, after the viewing of the photographs, an F.B.I. agent dictated a single statement for both witnesses to sign.

■ In Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), the Supreme Court set the standard to be used in determining the acceptability of photo identification under the due process clause:

> "[I]nstead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The same arguments urged here as to the infirmity of the photos were made at trial both to the court and to the jury. Actually, each of the six photos is comprised of a profile and front view of its respective subject. Having carefully examined the photos in question, we conclude that the trial court was correct in its determination that there was no suggestion, much less one violative of due process as established by Simmons. The fact that the F.B.I. agent dictated the same statement to both witnesses is of little consequence since both witnesses had already made a positive identification of appellant.

■ Appellant also contends the witnesses' view of him in the hallway prior to trial further tainted their in-court identification. United States v. Jackson, 448 F.2d 963 (9th Cir. 1971), outlines various factors to consider in determining whether such a confrontation is so unduly suggestive as to violate due process of law. Applying these factors, appellant's instant argument must fail. First there is no evidence, nor does appellant assert, that such confrontation was planned by the prosecution. Second, no officials pointed out appellant to the witnesses. Third, witnesses Gamboa and Johnson had previously identified appellant at the photo spread. Fourth, there was independent evidence, the bank surveillance photos, identifying appellant.

Appellant argues finally that the evidence did not support a finding that the weapon appellant used was a dangerous weapon or device as required by 18 U.S.C. § 2113(d). Basically, he asserts that the weapon was not introduced into evidence and that there was no proof the gun was loaded, i. e. no one had seen the gun fired or heard gunshots.

■ It is the law in this Circuit that if a gun is used in the course of a bank robbery the jury may infer, in the absence of evidence to the contrary, that the gun was loaded. Wagner v. United States, 264 F.2d 524, 530–531 (9th Cir. 1959). Indeed, in United States v. DePalma, 414 F.2d 394 (9th Cir. 1969) also a case involving § 2113(d), the court reiterated the law of Wagner, stating:

> "True, there was no direct evidence the gun was loaded. But as we said in Wagner, supra, the jury could infer it was. Mrs. Cazares, (the employee) inferred it was, as appellant wanted her to do, and as we think most reasonable persons could under the situation here described." Id. at 396.

The witnesses all testified that they saw what appeared to be a gun in appellant's hands. Moreover, the surveillance photos clearly show the weapon. Contrary to appellant's assertion, there was sufficient evidence for the jury to infer that the gun was loaded under the *Wagner-DePalma* rationale.

Affirmed.