**UNITED STATES of America,**
**Plaintiff-Appellee**

**v.**

**Royal Stafford TERRY,**
**Defendant-Appellant.**

**No. 84–1048.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 16, 1985.

Decided May 13, 1985.

As Amended July 2, 1985.

---

Floy E. Dawson, San Francisco, Cal., for plaintiff-appellee.

A.J. Kramer, San Francisco, Cal., for defendant-appellant.

Before CHOY, Senior Circuit Judge, FARRIS and BEEZER, Circuit Judges.

CHOY, Senior Circuit Judge:

Defendant-appellant Royal Stafford Terry was convicted of three counts of armed

bank robbery under 18 U.S.C. § 2113(a) & (d). He was sentenced to 15 years imprisonment on each count, the sentences to run concurrently.

There is no dispute that three separate bank robberies by a man wielding a gun occurred in 1983. The only issue at trial was whether the defendant was the robber of the three banks. The prosecution introduced surveillance photographs and presented seven eyewitnesses to the robberies (at least two per robbery) who positively identified the defendant in court as the man who committed the respective robberies. Although the evidence suggests that the robber was clean shaven in at least two of the robberies, the witnesses nevertheless identified Terry, who was bearded at the time of the trial, as the robber.

Members of the defendant's family and a neighbor testified, for the defense, that Terry could not have been the robber because they have always known Terry to wear a full beard and he had a beard around the times of the robberies.

The prosecution introduced photographs of Terry, derived from various police mugshots, taken between 1976 and 1981 showing Terry either clean shaven or in various hirsute states. Agent Lewis, who interviewed Terry after an illegal arrest six days after the last bank robbery, testified that Terry had a new growth of beard of about two or three days.

## ISSUES

1) Was there sufficient evidence for a reasonable jury to find that Terry was the man who committed the three bank robberies?

2) Was there sufficient evidence that the robber put life in jeopardy by the use of a dangerous weapon to sustain Terry's conviction for *armed* robbery?

3) Must this court reverse Terry's convictions because Agent Lewis should not have been allowed to testify about Terry's facial appearance following Terry's illegal arrest?

4) Was the trial court's admission of the altered mugshots of Terry improper because they were irrelevant and unfairly prejudicial?

## ANALYSIS

1) *Sufficiency of the Evidence to Prove that Terry was the Robber*

 The eyewitnesses who identified the defendant in court as the robber in each robbery were subjected to cross-examination directed at weakening their identification of Terry. Those who were asked on redirect reasserted their certainty that Terry was the robber and none of the others retracted their initial identification. Were this the extent of the evidence, there could be no doubt that these positive identifications would provide sufficient evidence to sustain the convictions.

Here, however, the defense put on witnesses who testified that Terry had a beard during the times that the robberies were committed whereas the robber at each of the banks did not have a beard.[1] Many of these witnesses testified that the surveillance photos were not of defendant because the photos depicted clean shaven men.

In determining the sufficiency of the evidence, the standard of review is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime charged beyond a reasonable doubt. *United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir.1984). The credibility of the defense witnesses was somewhat suspect given some discrepancies in their testimony and because some of those who denied that the surveillance photos

---

**1.** The evidence is unclear as to whether the robber of one of the banks was bearded or clean shaven.

depicted defendant also refused to acknowledge that certain pictures that were stipulated to be of Terry were in fact pictures of defendant.

Thus, a reasonable jury could have believed the prosecution's eyewitnesses and rejected the testimony of the defense witnesses. We have made clear that "[t]he trier of fact has a wide latitude in which to decide which witnesses to believe or disbelieve." *Clevenger*, 733 F.2d at 1359.

Furthermore, it is also possible that the defense witnesses were not lying but simply mistaken as to Terry's beard, either because they forgot or because Terry could have worn a fake beard when he was in their presence. Similarly, while the defense makes much of the fact that none of the bank eyewitnesses noticed a scar below the robber's left eye nor one on the robber's neck, it is possible that Terry simply used makeup to cover up these scars before robbing the banks. Since we must view all the evidence in a light most favorable to the government, it is clear that a jury could have concluded beyond a reasonable doubt that Terry was the robber.

2) *Sufficiency of the Evidence to Show that the Robber Put Life in Jeopardy by the Use of a Dangerous Weapon*

■ Subsection (d) of 18 U.S.C. § 2113 enhances the penalty for bank robbery when the defendant "puts in jeopardy the life of any person by the use of a dangerous weapon." To fall under this armed robbery provision, the Ninth Circuit requires that the gun be objectively capable of causing harm, i.e., that the gun be loaded and operable. *See, e.g., United States v. Booth*, 669 F.2d 1231, 1239 (9th Cir. 1981); *United States v. Jones*, 512 F.2d 347, 351 (9th Cir.1975); *United States v. De Palma*, 414 F.2d 394, 396 (9th Cir.1969), *cert. denied*, 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970). However, this court has held that "if a gun is used in the course

of a bank robbery the jury may infer, in the absence of evidence to the contrary, that the gun was loaded." *United States v. Jones*, 512 F.2d 347, 351 (9th Cir.1975).

■ There is no dispute that at each of the three robberies the robber possessed a gun and pointed it at persons in a threatening manner. These persons testified that they were very frightened at the sight of the robber with his gun. No evidence suggesting that the gun was not loaded or otherwise non-functional was presented. As stated in *Wagner v. United States*, 264 F.2d 524, 530 n. 8 (9th Cir.), *cert. denied*, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548, *reh'g denied*, 361 U.S. 857, 80 S.Ct. 48, 4 L.Ed.2d 97 (1959), "[w]hen ... a robber displays a gun to back up his demands, he wants his victim to believe that it is loaded, and the fact-finder may fairly infer that it was." Viewing the evidence and the possible inferences to be drawn from it in the light most favorable to the government, the evidence presented was sufficient to support Terry's conviction under § 2113(d). *See United States v. Love*, 746 F.2d 477, 479–80 (9th Cir.1984).

■ Appellant contends, however, that the *Jones* and *Wagner* principle as applied to this case represents an unconstitutional shifting of the government's burden to prove all elements of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). He argues that it was impossible for him to provide the contrary evidence required in *Jones* to refute the inference of objective capability, because he has all along denied participation in the robbery. He could not testify that he did not load the gun for that would amount to an admission that he was the robber.

It is clear, however, that appellant's dilemma is simply the natural result of his decision to deny participation in the rob-

bery.[2] The government established the basic facts necessary to support the inference of objective capability allowed in *Jones* and *Wagner*. There was simply no evidence available to Terry in this case to rebut that inference.

Furthermore, this case is indistinguishable from *Jones*. The defendant in *Jones* also denied participation in the robbery and the gunman's testimony was the only potential exculpatory evidence on objective capability. Yet, the court was not troubled with the dilemma the defendant faced and applied the *Wagner* inference. We conclude that there was sufficient evidence from which a reasonable jury could infer that the gun was loaded and operable.

### 3) *Admissibility of Agent Lewis' Testimony*

An Agent Lewis interviewed Terry shortly after he was illegally arrested on August 11, 1983, six days after the third bank robbery. At trial, over the defendant's objection, Lewis testified as a rebuttal witness that defendant had a new growth of beard of about two or three days and that he did not notice that defendant was missing any teeth.

▆ Defendant contends that Lewis' testimony should have been excluded as the fruit of an unlawful arrest. The illegality of the arrest is not contested. It is also clear that Lewis' observations of defendant were a direct result of the illegal arrest. The government contends, however, that the illegally obtained evidence is admissible to impeach the defendant's witnesses who testified that the defendant had a beard at the time of each of the robberies. We need not resolve that issue, however, because

even if the admission of Lewis' testimony was "constitutional error," the error was harmless beyond a reasonable doubt. *See United States v. Spetz*, 721 F.2d 1457, 1473–74 (9th Cir.1983).

The most significant portion of Lewis' testimony was his statement that the defendant appeared to have a new growth of beard of about two or three days. However, defense counsel had earlier introduced a photograph of the defendant taken one day after the interview. Consequently, the jury could see the state of defendant's beard and infer what it looked like on the day of the interview. Indeed, upon cross-examination, Lewis testified that the picture showed defendant with what he described as three or four days growth. Therefore, Lewis' testimony did not add much to the pictorial evidence already available to the jury.

The defense also argues that Lewis' testimony that he did not notice that Terry was missing any teeth is crucial to the prosecution's case, because the defense had emphasized the fact that none of the robbery victims had noticed any missing teeth on the robber. (Terry has had missing teeth for many years.) However, a review of each victim's testimony indicates that none of the robbery victims specifically denied noticing missing teeth, but instead merely denied noticing "unusual marks" in general. Because the defense thus had a weak argument in the first place, Lewis' rebuttal testimony was probably unnecessary.

### 4) *Admissibility of the Altered Mugshots*

▆ Terry contends that the trial court erred in admitting Exhibits 4–9, altered mugshots and registration shots of defendant taken between 1976 and 1981, claiming

---

**2.** Moreover, there are other potential ways to provide the contrary evidence besides testimony from the gunman. For example, if the gun had been dropped at the scene of the robbery, the defendant could introduce the unloaded gun as evidence, or if the robber had pulled the trigger

and nothing happened, the defendant could introduce testimony to that effect. While it is true that no situation of a comparable nature transpired in this case, a defendant is not constitutionally entitled to the *existence* of exculpatory evidence.

that they were irrelevant and improperly suggestive of prior convictions or arrests. The government argues that the pictures, showing Terry clean shaven or in various hirsute states, were relevant because they rebutted defense witnesses' testimony that Terry possessed a full beard during the past few years. It is true that none of the defense witnesses clearly stated that they had seen Terry with a beard around the *specific* times that any of the pictures were taken. However, many did testify that they had always known Terry to have a full beard whenever they did see him in the past ten or so years and thus the photographs, while not providing *conclusive* impeachment, do offer some evidence of possible lack of credibility.

Furthermore, the defense witnesses' testimony probably gave the impression that it was Terry's style always to wear a beard. The photographs could lead the jury to reject that impression, thus making it more plausible that Terry could have been the clean shaven bank robber. Finally, the pictures could be used by the jury for comparison with the surveillance photographs and they also could aid the jury in evaluating the ability of the prosecution witnesses to identify positively the bearded Terry in court as the clean shaven robber at the banks. In sum, the exhibits could have been very relevant to the jury.

Arguing that the pictures were highly prejudicial, the defendant notes that the trial judge referred to the pictures as "obviously mugshots" and "prejudicial." However, the judge was actually referring to the unaltered pictures that still had the identification numbers on them. Those exhibits were not shown to nor mentioned in front of the jury. Indeed, the judge rejected defense counsel's claim of prejudice and at the judge's suggestion, the numbers were removed and the pictures admitted without the incriminating numbers. At no time did the jury hear anything to suggest that the pictures were mugshots. We conclude that the trial judge acted well within his discretion in admitting the photographs.

Appellant's conviction is

AFFIRMED.