UNITED STATES of America,
Plaintiff-Appellee.

v.

Joseph GIVENS, Jr.,
Defendant-Appellant.

No. 84–5190.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1985.

Decided July 29, 1985.

James Asperger, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Carlton F. Gunn, Los Angeles, Cal., for defendant-appellant.

Before WRIGHT, ALARCON, and NORRIS, Circuit Judges.

ALARCON, Circuit Judge:

Joseph Givens, Jr. appeals from his conviction for armed postal robbery, in violation of 18 U.S.C. § 2114, and from his sentence of twenty-five years imprisonment pursuant to 18 U.S.C. § 4205(b)(2).

**I**

Givens seeks reversal on the following grounds:

*One.* The district court erred in ruling that Givens' prior convictions would be admissible for impeachment purposes if he chose to testify.

*Two.* The district court erred in allowing an eyewitness to make an in-court identification of Givens after the eyewitness had been exposed to a potentially suggestive pretrial identification procedure.

*Three.* The district court erred in ruling that the government was not required to disclose to Givens, prior to trial, testimony and exhibits introduced to rebut defense testimony.

*Four.* The district court erred in failing to dismiss the "armed" count of the indictment for armed postal robbery because the government neglected to include in the indictment an allegation that Givens' gun was loaded.

*Five.* The district court erred by refusing to consider at sentencing inadmissible polygraph evidence which suggested that Givens was innocent.

We discuss each issue and the facts pertinent thereto under separate headings.

**II**

**ADMISSIBILITY OF PRIOR CONVICTIONS**

Givens contends that the trial court erred in ruling that evidence of his prior robbery convictions could be used to impeach him if he chose to testify. We review the district court's decision to admit prior convictions as impeachment evidence for an abuse of discretion. *United States v. Field,* 625 F.2d 862, 871 (9th Cir.1980).

*A. Reviewability*

At a threshold level, the government argues that Givens did not preserve his right to raise this issue on appeal. Subsequent to the filing of Givens' opening brief before this court, the Supreme Court held that a defendant must testify in order to preserve for review the claim of improper impeachment with a prior conviction. *See Luce v. United States,* 469 U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). At the time of Givens' trial, the law of this circuit required that the defendant do two things to preserve the issue for review: (1) establish on the record that he will in fact take the stand and testify if his challenged

prior convictions are excluded, and (2) sufficiently outline the nature of his anticipated testimony so that the trial court and reviewing court can perform the balancing required by Rule 609. *See United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir.1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). *Luce* expressly overruled *Cook* on this point. *Luce*, 105 S.Ct. at 463 n. 3.

▉ Givens contends that retroactive application of *Luce* to preclude review of his claim would be fundamentally unfair because he did everything necessary to preserve his right to appeal under the law applicable at the time of his trial. We agree. Although judicial decisions generally apply retroactively, the Constitution does not require retroactive application of a new rule of law. *Solem v. Stumes*, —— U.S. ——, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). In determining whether to give retroactive effect to a decision, we consider: (1) whether the decision establishes a new principle of law, (2) whether retroactive application will further or retard the purposes of the rule in question, and (3) whether applying the new decision will produce substantial inequitable results. *Barina v. Gulf Trading & Transportation Co.*, 726 F.2d 560, 563 (9th Cir.1984) (*citing Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) ).

In the instant case, *Luce* establishes a new principle of law which would, if applied ·retroactively, wreak a substantial inequity by precluding Givens from challenging the admissibility of proof of his prior convictions. Although application of the *Luce* principle to the present case arguably would further the purpose of the rule by providing the trial court with concrete testimony on which to base its ruling (*Luce, supra*, 105 S.Ct. at 463), the first and third factors militate so strongly against retroactive application that they outweigh the second factor. *See United States v. Portillo*, 633 F.2d 1313, 1321–22 (9th Cir.1980), (*Cook* requirement for preserving right to appeal from ruling on ad-

missibility of prior convictions not retroactively applicable to defendant whose trial was held before *Cook* was decided), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 1764, 68 L.Ed.2d 241 (1981).

We are mindful of the fact that in a memorandum decision, the Supreme Court has granted certiorari, vacated the judgment of the Eleventh Circuit in *United States v. DiMatteo*, 716 F.2d 1361 (11th Cir.1983), and remanded for "further consideration in light of *Luce v. United States*, 469 U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1985)." The Supreme Court did not discuss the basis for its brief order. *United States v. DiMatteo*, —— U.S. ——, 105 S.Ct. 769, 83 L.Ed.2d 267 (1985).

*DiMatteo* is clearly distinguishable from the facts presented in the record before us. In *DiMatteo*, when the defendant indicated that he was prepared to call Caldevilla to testify on his behalf, the government advised the court that its cross-examination concerning the witness' participation in an independent drug smuggling conspiracy might cause him to assert his privilege against self-incrimination. *Id.* at 1365. The district court ruled that the cross-examination would be permitted. The defendant then chose to forego calling Caldevilla as a witness. On appeal to the Eleventh Circuit, DiMatteo argued that the court's ruling was error. The government argued that the alleged error had not been preserved because Caldevilla did not testify. After noting that the issue had not been previously addressed by the Eleventh Circuit, the court held that "error is preserved when evidence is withdrawn following an anticipatory ruling by the trial court." *Id.* Thus, the defendant in *DiMatteo* did not rely on the law of the circuit in attempting to lay a foundation for the presentation of the error for appellate review because the issue had not been presented to the Eleventh Circuit.

In the instant matter, Givens faithfully relied on the law of this circuit in making his record before the trial court to preserve the alleged error for appellate review. We believe that it would be grossly unfair to

apply *Luce* under these circumstances. Nothing in the Supreme Court's order in *DiMatteo* requires us to be unjust. We do not read the Court's brief remand order in *DiMatteo* as creating an inflexible rule of retroactivity applicable to all cases without regard to any injustice which might result. As in *Portillo*, we refuse to impose subsequently-created requirements for preserving a claim on appeal on a defendant who did all that was necessary to comply with the law applicable at the time of his trial. By doing so, we avoid " 'the brutal absurdity of commanding a man today to do something yesterday.' " *Portillo, supra,* at 1321 (*quoting* L. Fuller, *The Morality of Law* 59 (1964)). Because Givens did all that was required at the time of trial to preserve his right to appeal on this issue, we hold that *Luce* is not retroactively applicable to bar his appeal from the district court's ruling on the admissibility of his prior convictions.

#### B. *Admissibility of Prior Convictions*

Givens contends that the district court abused its discretion in ruling that his prior convictions were admissible by failing to make an adequate record of the factors which contributed to the court's decision, and by incorrectly weighing the probative value of the evidence against its prejudicial effect as required by Fed.R.Evid. 609(a)(1). We reject both contentions.

■ The prior convictions at issue are Givens' 1975 conviction for robbery and his 1976 conviction for attempted robbery and assault with a deadly weapon on a police officer.[1] The record shows that the trial judge was aware of the requirements of Rule 609(a)(1). He stated that he had considered the five factors set forth in *Cook* which are relevant when balancing the probative value of a conviction against its prejudicial effect. *United States v. Cook, supra,* at 1185 n. 8.[2] The judge summarized his findings as follows:

> [T]here is a prejudicial effect ... [but] credibility here is [an] extremely ... important part of this case ... [including] credibility as to the ... defendant's testimony and his explanation for knowing certain things, as well [as] his alibi.

The district court's summary of its reasons for admitting the evidence of prior convictions meets the requirements imposed by this court. We have found a district court's record adequate where the trial judge states that he performed the balancing required by Rule 609(a)(1). *See Portillo, supra,* at 1322; *see also Field, supra,* at 872 n. 6 (fact that the trial court granted defendant's motion *in limine* to exclude one prior conviction while overruling the motion as to another conviction "amply indicate[d] that ... [the judge] was engaged in the process of balancing"). In *Cook, supra,* in reviewing the trial judge's ruling that the probative value of admitting evidence of the defendant's prior convictions outweighed the prejudicial effect, we commented as follows:

---

1. The government does not assert that the prior convictions are admissible under Fed.R.Evid. 609(a)(2) (rendering admissible convictions which involve dishonesty or false statement), nor could it. Generally, crimes of violence, theft crimes, and crimes of stealth do not involve dishonesty or false statement within the meaning of Rule 609(a)(2). *United States v. Glenn,* 667 F.2d 1269, 1273 (9th Cir.1982). Moreover, the prior convictions cannot be admitted under Fed.R.Evid. 609(a)(2) simply because the convictions may have some bearing on credibility; theft convictions are not necessarily admissible under Rule 609(a)(2). *Id.* at 1273 n. 1. While a theft conviction may be admissible under Rule 609(a)(2) if the crime was actually committed by fraudulent or deceitful means (*id.* at 1273), the government has not

demonstrated that either of Givens' prior convictions involved fraud or deceit.

2. The five factors are:
 1. The impeachment value of the prior crime.
 2. The point in time of the conviction and the witness' subsequent history.
 3. The similarity between the past crime and the charged crime.
 4. The importance of the defendant's testimony.
 5. The centrality of the credibility issue. *Cook, supra,* at 1185 n. 8 (*quoting United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976) ).

[The trial court's] balancing of the respective values contemplated in Rule 609 at best was inarticulate, and at worst revealed that he misconceived the purpose of the rule. However, the ruling did not constitute an abuse of discretion, as appropriate reasons could have been given for it. The decision to permit the prior convictions to come in was not, therefore, the kind of error that requires reversal under Fed.R.Evid. 103. The defendant had a fair trial, and no useful purpose would be served by another trial merely to enable the trial court to express its decision in language suggested by the commentators on Rule 609.

*Id.* at 1187–88.

■ The trial court did not abuse its discretion by determining that the probative value of the prior convictions outweighed their prejudicial effect on Givens. Givens' proposed testimony, in which he would have denied committing the offense, would have placed his credibility directly at issue. We have previously held that prior convictions for robbery are probative of veracity. *See United States v. Oaxaca,* 569 F.2d 518, 527 (9th Cir.1978). The district court could reasonably have concluded that the impeachment value of the prior convictions would outweigh their admitted prejudicial effect.

### III

### EYEWITNESS IDENTIFICATION

Givens next contends that the district court erred in allowing an eyewitness, Wilbert McDowell, to make an in-court identification of Givens. Givens asserts that the pretrial identification procedure employed by Postal Inspector Fulsom was impermissibly suggestive, and thus tainted McDowell's in-court identification.

■ We review the constitutionality of pretrial identification procedures *de novo*. *United States v. Love,* 746 F.2d 477, 478 (9th Cir.1984); *see Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) (ultimate conclusion as to constitutionality of pretrial identification

procedure is mixed question of law and fact). *See also Manson v. Brathwaite,* 432 U.S. 98, 114–17, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140 (1977) (court reviewed constitutionality of suggestive pretrial photo identification procedure by performing independent review of constitutional significance of facts as found by trial court).

■ In the present case, Wilbert McDowell, the post office supervisor on duty at the time of the robbery, observed Givens standing in the post office lobby before the robbery. McDowell also observed Givens standing on the counter pointing a gun at the clerk. Postal Inspector Fulsom prepared a photospread containing six photographs. He showed the photospread to McDowell at the Compton Post Office approximately two weeks after the robbery. Before asking McDowell to select a photograph, Inspector Fulsom advised McDowell that he was not obligated to select any photograph and cautioned him not to make any inference that the suspect was on the photospread. McDowell studied the spread for several minutes, then chose Givens' photograph, stating "that looks like him." Immediately thereafter, McDowell overheard Fulsom making a phone call to a superior in which Fulsom informed the supervisor that McDowell had chosen a photograph. Fifteen minutes later, Fulsom asked McDowell how he felt about his choice. McDowell replied that he felt that the photograph he had chosen was that of the man who had robbed the post office.

McDowell had previously told postal inspectors that the robber had worn a print shirt. One day after McDowell's photospread identification, Inspector Fulsom displayed a single photograph to McDowell. The photograph was a full length shot of Givens, including his face. Inspector Fulsom asked McDowell if the shirt in the photograph was the one worn by the robber. McDowell replied "No, that's not the shirt." At the hearing on the motion to suppress the eyewitness identification, McDowell testified that he had not recognized Givens in the single photo display

because he was focusing on identifying the shirt.

At trial, McDowell was asked to look around the courtroom and to indicate whether the robber was present. McDowell identified Givens, who was seated at the defense counsel table. He stated that to the best of his recollection, Givens "would come close to the description of" his recollection of the robber's appearance.

We conduct a two-step inquiry into the constitutionality of a pretrial identification procedure. *See Love, supra,* at 478. First, we must determine whether the procedure was "so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Field, supra,* at 866. Second, if the identification procedure was impermissibly suggestive, we must decide whether it was "nonetheless reliable." *Manson, supra,* 432 U.S. at 107, 97 S.Ct. at 2249; *Neil v. Biggers,* 409 U.S. 188, 198–200, 93 S.Ct. 375, 381–382, 34 L.Ed.2d 401 (1972).

Givens assumes that the procedure in the present case was impermissibly suggestive, and argues that the in-court identification was unreliable in light of the five-factored analysis set forth in *Neil, supra.*[3] We need not reach the issue of the reliability of the in-court identification because the facts of this case plainly demonstrate that the pretrial identification procedure employed was not successful in suggesting to McDowell that he had correctly identified Givens. Givens asserts that four events which occurred prior to McDowell's in-court identification of Givens combined to suggest to McDowell that Givens was the robber: the photospread display; Inspector Fulsom's questioning of McDowell regarding his feeling about his initial identification; the display of a single photograph of Givens; and the fact that Givens was seated at the

defense counsel table when McDowell made his in-court identification.

We address the suggestiveness of each of these events standing alone, as well as their cumulative impact upon McDowell's in-court identification. First, we recognize that Givens does not contest the admissibility of McDowell's photospread identification for purposes of corroborating his in-court identification. However, we construe Givens' argument that the entire identification procedure was suggestive and therefore tainted McDowell's in-court identification, as including the photospread display. We have examined the photospread procedure and conclude that it was not suggestive.

■ Second, Inspector Fulsom's questioning of McDowell regarding his feelings about his selection from the photospread was not suggestive; such questioning constitutes proper police conduct aimed at assessing the strength of McDowell's identification.

■ Givens focuses primarily upon the purported suggestiveness of the single photograph display. Showing a witness a single photograph which potentially suggests an identification desired by law enforcement officials is improper conduct which we do not condone. However, "the deterrence of such conduct is not the primary purpose behind judicial review of tainted identification testimony." *Green v. Loggins,* 614 F.2d 219, 222 (9th Cir.1980). As we observed in *Field:*

> To be sure, deterrence of improper police conduct is a worthy goal. But when improper police conduct, directed only at a witness, does not taint the reliability of that witness' identification evidence, the defendant has nothing of which to complain. Probative evidence should not be kept from a jury at the behest of a

---

3. In *Neil,* the Supreme Court instructed trial courts to evaluate:

> ■ The opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the crimi-

nal, [4] the level of certainty demonstrated by the witness at the confrontation, [and] [5] the length of time between the crime and the confrontation.

*Id.* at 199–200, 93 S.Ct. at 382.

defendant whose rights are unaffected by the police conduct.

*Field, supra,* at 868. Because McDowell failed to recognize Givens when shown the single photograph, its display did not confirm or suggest to McDowell that his original identification of Givens from the photospread was correct.[4]

■ Finally, Givens argues that the fact that Givens was seated at the defense counsel table when McDowell made his in-court identification was suggestive, and in light of the tentative nature of McDowell's initial identification of Givens from the photospread, tainted McDowell's in-court identification. We disagree. McDowell's initial identification of Givens was sufficiently certain that Givens' seating in the courtroom did not operate to reinforce his in-court identification of Givens. *See Allen v. Rhay,* 431 F.2d 1160, 1165 (9th Cir.1970) (witness' view of defendant at counsel table did not appreciably add anything to witness' final identification where witnesses had identified defendant from photographs and seen defendant in line-up), *cert. denied,* 404 U.S. 834, 92 S.Ct. 116, 30 L.Ed.2d 64 (1971). Furthermore, as the Supreme Court noted in *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), counsel for a defendant may request that defendant be seated with other people in the courtroom when a witness attempts an identification. *Id.* at 230 n. 5, 98 S.Ct. at 465 n. 5. Givens' attorney made no such request.[5]

In sum, none of the events which led up to McDowell's in-court identification were suggestive. Moreover, the cumulative impact of these events was likewise not suggestive. Therefore, the pretrial identification procedure did not taint McDowell's in-court identification of Givens.

## IV

## ADMISSIBILITY OF REBUTTAL EVIDENCE

Givens asserts that the district court erred in overruling his objection to the admissibility of the government's rebuttal testimony and exhibits on the ground that the evidence was not disclosed during discovery.

Givens relied upon an alibi defense at trial. Three defense witnesses testified that Givens was at his cousin's home at the approximate time of the robbery. In an apparent attempt to establish that someone else committed the robbery, Givens introduced into evidence (1) a photograph of a latent shoeprint removed from the post office counter; (2) a pair of Givens' tennis shoes which did not match the latent shoeprint found in the post office; and (3) Givens' wife's testimony that these were the only tennis shoes which Givens owned.

During rebuttal, the government attempted to impeach Givens' wife's testimony regarding the tennis shoes. Postal Inspector Michael Cassidy testified that he had seen Givens one year earlier wearing

---

4. Indeed, McDowell's failure to recognize Givens in the single photograph shown to him one day after his initial identification could have been harmful to the prosecution because it provided Givens' counsel with an excellent opportunity to impeach McDowell and to diminish the weight of McDowell's testimony. *See Manson, supra,* at 113 n. 14, 97 S.Ct. at 2252 n. 14 (counsel could have "cross-examine[d] the identification witness and argue[d] in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi") (*quoting Clemons v. United States,* 408 F.2d 1230, 1251 (1968) (Leventhal, J., concurring), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969) ); *see also Watkins v. Sowders,* 449 U.S. 341, 347, 101 S.Ct. 654, 658, 66

L.Ed.2d 549 (1981) (jury has duty to assess the reliability of identification evidence). For reasons which do not appear in the record, Givens' attorney did not capitalize on this opportunity.

5. Givens' citation to *Moore v. Illinois,* 434 U.S. 220, 229–30, 98 S.Ct. 458, 465, 54 L.Ed.2d 424 (1977) for the proposition that in-court identifications are impermissibly suggestive is inapposite. *Moore* dealt with a defendant's Sixth Amendment right to counsel during a critical first confrontation between suspect and witness at a judicial proceeding. As Givens admits, the instant in-court identification was not the critical first confrontation between Givens and McDowell, and Givens' attorney was present at the time.

what appeared to be Converse tennis shoes. The pair of shoes identified by Mrs. Givens, as belonging to her husband, were not made by Converse. The government also presented expert testimony that the latent shoeprint removed from the post office counter was made by a Converse tennis shoe. Two pair of Converse shoes were admitted into evidence to illustrate this testimony. Givens objected to the introduction of the evidence, arguing that the testimony and exhibits should have been disclosed pursuant to Fed.R.Crim.P. 12.1(b) (testimony) and 16(a)(1)(C) (exhibits). On this appeal, Givens argues that the district court erred by refusing to exclude the undisclosed evidence pursuant to Rules 12.-1(d) and 16(d)(2).

 We review the district court's construction of Rule 16(a)(1)(C) *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* — U.S. — 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We review the district court's application of both statutes for an abuse of discretion. *United States v. Merrill*, 746 F.2d 458, 465 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985).

Federal Rule of Criminal Procedure 16(a)(1)(C) provides, in relevant part, that all "tangible objects" are discoverable by a defendant when they "are intended for use by the government as evidence in chief at the trial ...." Givens contends that the existence of the evidence concerning the Converse shoe print that the government offered in rebuttal should have been disclosed to him pursuant to Rule 16(a)(1)(C). He asserts that this evidence served not only to rebut the testimony of Givens' alibi witnesses, but also to corroborate part of the government's case-in-chief.

 The heart of Givens' argument is that the district court erred in construing the phrase "evidence in chief" as referring to proof that is presented in the government's *case-*in-chief. The Advisory Committee note to Rule 16(a)(1)(C), however, uses "case-in-chief" interchangeably with "evidence in chief." Such a construction is consistent with that adopted by other courts which have interpreted the rule. *See, e.g., United States v. Turkish*, 458 F.Supp. 874, 882 (S.D.N.Y.1978), *aff'd* 623 F.2d 769 (2d Cir.1980) (documents intended for use by the government as evidence in chief at the trial interpreted to include documents which will be marked and offered in evidence by the government during its case-in-chief). We agree with the district court's construction of Rule 16(a)(1)(C) concerning the Converse shoe evidence.

 The evidence was offered to impeach Givens' wife's testimony that Givens owned only one pair of tennis shoes. The fact that it provided some remote corroboration for the eyewitness testimony that Givens was the perpetrator does not establish that it was "intended for use by the government as evidence in chief at the trial."

Givens also contends that Fed.R.Crim.P. 12.1(b)(1) required the government to disclose the names of the witnesses who testified in rebuttal concerning the Converse tennis shoes. In an attempt to create a reasonable doubt in the minds of the jurors, Givens raised two theories in his defense. First, he introduced evidence intended to establish an alibi. Second, he attempted to show that someone else had committed the robbery by introducing testimony that he did not own shoes of the type responsible for the latent footprint found on the post office counter.

 The government was aware of Givens' intent to rely upon an alibi defense at trial because Givens gave the government timely notice of the alibi pursuant to Rule 12.1(a). There is nothing in the record establishing that the government was aware prior to resting its case-in-chief that Givens would offer affirmative evidence that someone else was responsible for the crime. In fact, having seized Givens' tennis shoes following his arrest and having determined that they could not have made the footprint found on the counter, the government did not introduce evidence of the latent footprint as a part of its case-in-

chief. However, when Givens' wife testified that Givens did not own shoes which could have made the footprint on the counter, the government introduced evidence to rebut the inference created by her testimony that someone else had committed the robbery.

Givens' assertion that the government's rebuttal evidence was discoverable under Rule 12.1(b) misconceives the purpose of the Rule. Fed.R.Crim.P. 12.1(a) requires a defendant to give notice of alibi to the government, and Rule 12.1(b) imposes a reciprocal duty on the government to disclose to the defense the names and addresses of "the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses." The Advisory Committee note to Rule 12.1 makes clear that the government has an obligation to disclose only those witnesses who will provide testimony tending to controvert the defendant's alibi defense. Because the government's rebuttal evidence concerning the Converse shoes did not relate to Givens' alibi, i.e. that he was at his cousin's home, but was offered instead to show that Mrs. Givens' testimony that he owned one pair of tennis shoes was not credible, it was not discoverable under Rule 12.1(b).

The record does not support the conclusion suggested by Givens that the government intended to rely upon its rebuttal witnesses to establish his presence at the scene of the robbery. But for Givens' attempt to prove that someone else committed the robbery, the evidence offered by the government would not have been relevant or admissible in rebuttal. No error occurred in the government's failure to disclose the names of the rebuttal witnesses.

## V

## SUFFICIENCY OF THE INDICTMENT

At the close of trial Givens moved to dismiss the dangerous weapon allegation because the government failed to allege that the gun was loaded. The sufficiency of an indictment is a question of law which we review *de novo*. *United States v. Christopher*, 700 F.2d 1253, 1257 (9th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged." A legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend, and to enable him to plead double jeopardy. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense. *Hamling, supra*, at 117, 94 S.Ct. at 2907. The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied. *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976).

We reject Givens' contention that the government's failure to allege that the gun was loaded rendered the indictment insufficient. The indictment follows the express language of 18 U.S.C. § 2114 by alleging that Givens used a "shotgun, a dangerous weapon and device" to commit the armed postal robbery. Other circuits have upheld similar indictments under the comparable bank robbery statute, 18 U.S.C. § 2113(d). *See Wheeler v. United States*, 317 F.2d 615, 617 (8th Cir.1963); *United States v. McGann*, 150 F.Supp. 463, 465 (D.Md.), *aff'd sub nom. Smith v. United States*, 250 F.2d 37 (4th Cir.1957), *cert. denied*, 355 U.S. 965, 78 S.Ct. 555, 2 L.Ed.2d 540 (1958). The determination whether a particular weapon is dangerous and puts in jeopardy the life of the mail custodian within the meaning of the statute must be made by the jury. *United States*

*v. Hudson,* 564 F.2d 1377, 1380 (9th Cir. 1977); *Wagner v. United States,* 264 F.2d 524, 530 (9th Cir.), *cert. denied,* 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959). Where there is no direct evidence showing that a gun was loaded, the fact finder may infer from the circumstances that the gun was loaded and thus dangerous within the purview of section 2114. *Id.; see also United States v. Terry,* 760 F.2d 939, 942 (9th Cir.1985) (if a gun is used in the course of armed bank robbery, the jury may infer, absent evidence to the contrary, that the gun was loaded).

█ In the instant case, the indictment adequately apprised Givens of the charge against which he was required to defend. The trial judge instructed the jury that the gun must have been loaded to support a conviction for armed postal robbery. He also informed the jury that it could (but was not required to) infer that the gun pointed at the postal clerk was loaded. In light of these instructions, the dangerous weapon allegation in the indictment was sufficient.

## VI

## CONSIDERATION OF POLYGRAPH EVIDENCE AT SENTENCING

Prior to sentencing, Givens filed a memorandum urging the court to consider polygraph evidence favorable to Givens which the court had ruled inadmissible at trial. Givens contends that the district court's refusal to consider the polygraph evidence at the sentencing proceedings constitutes reversible error.

█ The trial judge sentenced Givens to twenty-five years imprisonment pursuant to 18 U.S.C. § 2114 (providing that a person convicted of armed postal robbery "shall be imprisoned for twenty-five years"). The government argues that because the mandatory language of the statute leaves the trial judge with no discretion to impose a shorter period of imprisonment (*see Gregg v. United States,* 394 U.S. 489, 493, 89 S.Ct. 1134, 1137, 22 L.Ed.2d 442 (1969) ), it is irrelevant what information he

considered at sentencing. This argument is unpersuasive. Givens correctly notes that the trial judge could have exercised his discretion to place Givens on probation (*see id.*). Accordingly, evidence that casts doubt on the defendant's guilt was relevant information in choosing the appropriate sentence.

█ Sentencing which falls within statutory guidelines is left to the discretion of the sentencing court, and its decision is reviewable only for an abuse of discretion. *United States v. Chiago,* 699 F.2d 1012, 1014 (9th Cir.), *cert. denied,* —— U.S. —— 104 S.Ct. 171, 78 L.Ed.2d 154 (1983). The trial judge has broad discretion to consider a wide range of information in arriving at the sentencing decision. *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Campbell,* 724 F.2d 812, 812 (9th Cir. 1984).

█ We have held previously that a trial judge has broad discretion to include or exclude polygraph evidence at trial. *United States v. Falsia,* 724 F.2d 1339, 1341 (9th Cir.1983); *United States v. Demma,* 523 F.2d 981, 987 (9th Cir.1975) (en banc). We are persuaded that the trial judge possesses similar discretion in determining whether he should consider polygraph evidence at sentencing. In the present case, we cannot say that the trial judge abused his discretion by refusing to consider polygraph evidence at sentencing which he had ruled inadmissible at trial. The reliability of polygraph evidence is widely debated. *United States v. Marshall,* 526 F.2d 1349, 1360 (9th Cir.1975), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976). Multiple variables may influence the results of a polygraph test, including the motivation of the subject, his physical and mental condition, the competence, integrity, and attitude of the operator, the wording of the relevant questions, the appropriateness of the control questions, and the interpretation of the resulting graph. *United States v. Urquidez,* 356 F.Supp. 1363, 1366–67 (C.D.Cal.1973).

In light of the recognized unreliability of polygraph test results, the district court did not abuse his discretion in refusing to consider such evidence at sentencing.

The judgment is AFFIRMED.