33 F.3d 60
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Wayne BROWN, Defendant-Appellant.
 No. 93-10541.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1994.*
Decided Aug. 16, 1994.
 
 Before: FERNANDEZ, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Gary Wayne Brown challenges his conviction and sentence for committing extortion under pretense of office. 18 U.S.C. Sec. 872. We affirm the conviction, but vacate the sentence and remand for a redetermination of the offense level.
 
 DISCUSSION
 A. Sufficiency of Evidence
 
 3
 The government contends that we are precluded by the doctrine of invited error from reviewing the sufficiency of the evidence. We disagree.
 
 
 4
 Brown did not lead the district court into error. Brown asked the court to dismiss the extortion counts but the court dismissed the false personation counts. 18 U.S.C. Sec. 912. Moreover, Brown's arguments are not inherently inconsistent. In requesting consolidation of the indictment, Brown contended that the facts supported a charge of false personation but not extortion. At trial he raised a different argument--that the indictment charged extortion by a government officer rather than by pretense. That is the argument he now raises. The invited error doctrine does not preclude our review. See United States v. Gonzalez-Medina, 976 F.2d 570, 573 (9th Cir.1992); United States v. Schaff, 948 F.2d 501, 506 (9th Cir.1991).
 
 
 5
 Brown argues that he was not charged with extortion by pretense and that the evidence was insufficient to prove that he was a public officer. First, he claims that only a public officer can commit extortion under color of official right. However, whatever the crime of extortion may have been at common law, 18 U.S.C. Sec. 872 has expanded that crime to include private persons who represent themselves to be government officers and commit an act of extortion under "pretense of office."
 
 
 6
 Second, Brown claims that the indictment did not charge extortion by pretense. He argues that addition of the phrase "under color of official right" to the indictment changed the crime charged from extortion under pretense of office to extortion by a government officer and thereby incorporated the Hobbs Act definition of extortion. The indictment tracked the language of 18 U.S.C. Sec. 872. That is sufficient to state a crime under Sec. 872. See United States v. Fitzgerald, 882 F.2d 397, 399 (9th Cir.1989). The concluding phrase does not negate all that went before and convert the crime from extortion under pretense of office to extortion by a government officer. See United States v. Givens, 767 F.2d 574, 584 (9th Cir.), cert. denied, 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985). At most, it is surplusage. See United States v. Jenkins, 785 F.2d 1387, 1392 (9th Cir.), cert. denied, 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986). In other words, construing the indictment by the use of common sense, it sufficed to charge Brown with a pretense crime. It is plain, concise and definite; for present purposes it need not be more than that. See Fed.R.Crim.P. 7(c)(1).
 
 
 7
 Brown waived his objection to the sufficiency of the evidence by not renewing his motion for acquittal at the close of all the evidence. See, e.g., United States v. Parker, 991 F.2d 1493, 1499 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 121, 126 L.Ed.2d 86 (1993). Therefore, we have reviewed the sufficiency claim for plain error. Id. We find no such error.
 
 B. Jury Instructions
 
 8
 Brown claims that the jury was not instructed on mens rea. The instructions stated that an essential element of the offense was that defendant "intended to extort under pretense of office." Extortion under pretense of office was defined as defendant's "knowingly and deliberately represent[ing] himself to be acting under color or pretense of official right in order to obtain money, property, or something of value, to which he had no right." The jury was also instructed that the defendant had to have induced payment from his victim and inducement was defined. That is sufficient to define the mental state. Cf. United States v. Freeman, 6 F.3d 586, 594-95 (9th Cir.1993) (Hobbs Act extortion instruction that defendant demonstrate corrupt intent to induce payment and that there was quid pro quo), cert. denied, --- U.S. ----, 114 S.Ct. 1661, 128 L.Ed.2d 378 (1994).
 
 
 9
 Brown asserts that the court erred in instructing that it was not necessary for the government to prove that Brown made any specific threat or used force or fear. It did not; the use of force or fear is not an element of extortion under pretense of office under Sec. 872. His final contention that he could not be convicted for representing himself as a public officer and that the instructions erred in saying he could is just a further iteration of his misunderstanding of Sec. 872. There was no error in the jury instructions.
 
 C. Sentence
 1. Amount of Loss
 
 10
 The district court found that Brown threatened the victims by stating that they owed $100,000 in taxes. For that reason, the district court used $100,000 as the amount of loss in setting Brown's offense level. United States Sentencing Commission, Guidelines Manual, Secs. 2C1.1, 2F1.1(b)(1)(G).[1]
 
 
 11
 We do not agree with that calculation. The Commission has indicated that U.S.S.G. Sec. 2C1.1 is to be used for all offenses under 18 U.S.C. Sec. 872, even though Part C of Chapter Two of the Guidelines refers to "Offenses Involving Public Officials." We recognize that no person involved in this offense was a public official. Nevertheless, under the Guidelines we must treat Brown as if he were one for the purpose of determining his sentence. That being so, we are directed to increase his base offense level by a specific offense characteristic which is determined by considering the greater of "the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government...." U.S.S.G. Sec. 2C1.1(b)(2)(A).
 
 
 12
 The government suffered no loss, and the value of the payment and intended payment to Brown was $10,000. However, the district court either held that Brown had attempted to extort $100,000, as the presentence report declared, or held that the benefit to be received by the victims was that amount. We cannot be sure of the district court's rationale because at sentencing it first stated a theory like the second possibility, but then relied on both that statement and the presentence report when it actually imposed sentence. In either event it erred.
 
 
 13
 There was no evidence whatever that Brown ever attempted or intended to acquire $100,000 from the victims. The whole of the record shows that what Brown sought was ten percent of that amount, $10,000. Both victims so testified. The presentence report statement to the contrary is without a basis.
 
 
 14
 The notion that the benefit received or to be received by the victims was $100,000 is similarly unfounded. It is true that Brown told the victims that $100,000 of taxes was owed. That was $47,000 for one victim and $53,000 for the other. But that was a fiction. The fact of the matter was that the victims were to receive no benefit whatever. In other words, the tax deficiency was nothing more than a chimera, as is much of what con men promise. We see little justification for adding that fiction to the fiction that Brown is a public official.
 
 
 15
 Brown's acts are more dangerous than those of a con man who does not claim to be a public official, and that warrants some additional opprobrium. But it is interesting to notice that had Brown been prosecuted under the statute which specifically applies to people who demand money while pretending to be public officials, 18 U.S.C. Sec. 912, his Guidelines section would have been 2J1.4, which would have yielded an offense level of only six.
 
 
 16
 As it is, Brown will suffer a much higher Guidelines score as a result of the charges actually filed and the structure of the Guidelines. We see no reason to pile fiction upon fiction for the purpose of increasing that to a still further extent. The actual benefit to be received by these victims was not $100,000; it was a cessation of Brown's threats and demands. There never was a $100,000 amount to be received.
 
 
 17
 Therefore, Brown should have been sentenced on the basis of the payment he intended to extort from his victims--$10,000.
 
 2. Vulnerable Victim Adjustment
 
 18
 The district court added two offense levels because Brown knew or should have known that his victims were "particularly susceptible" to extortion. U.S.S.G. Sec. 3A1.1; see also id. comment. (n. 1). In determining whether a vulnerable victim adjustment is warranted, the court considers the "characteristics of the defendant's chosen victim, the victim's reaction to the criminal conduct, and the circumstances surrounding the criminal act." United States v. Peters, 962 F.2d 1410, 1417 (9th Cir.1992). The question is whether the particular victim is more susceptible than other potential victims of the same crime. See id. at 1418; United States v. Caterino, 957 F.2d 681, 683-84 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 129, 121 L.Ed.2d 83 (1992); United States v. Skillman, 922 F.2d 1370, 1377-78 (9th Cir.1990), cert. dismissed, --- U.S. ----, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991).
 
 
 19
 Our review of the record indicates that the district court did not err when it determined that Brown's victims were unusually vulnerable due to their lack of familiarity with our system of justice and their concerns about being involved with it. Those were facts which Brown well knew when he selected them to be his prey.
 
 
 20
 AFFIRMED in part; VACATED and REMANDED in part.
 
 
 21
 RYMER, Circuit Judge, concurring in part and dissenting in part:
 
 
 22
 I concur in all but part C.1. The district court found that Brown threatened the victims by stating that they owed $100,000 in taxes. For that reason, the district court used $100,000 as the amount of loss in setting Brown's offense level. U.S.S.G. Secs. 2C1.1, 2F1.1(b)(1)(G). Although there is no support in the record for finding that Brown sought to obtain more than 10% or $10,000 of that amount, $100,000 was nevertheless the correct measure of loss because it was the benefit "to be received" by the victims.
 
 
 23
 The Guidelines Manual directs the court to Sec. 2C1.1 as the guidelines section ordinarily applicable to 18 U.S.C. Sec. 872, which is the statute of conviction in Brown's case. Brown does not argue that his case is so atypical that Sec. 2C1.1 is inappropriate and that some other guideline section is more applicable. Nor did he seek a downward departure on the footing that the offense level calculated under Sec. 2C1.1 overstates his relevant conduct. Rather, he contends that because he was willing to settle for 10% of the amount demanded from each victim, his base offense level should only have been increased one level instead of six. I disagree.
 
 
 24
 Section 2C1.1(b)(2) on its face requires that Brown's offense characteristics be determined by the benefit to be received. It provides for an increase in base offense level if "the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense, whichever is greatest, exceeded $2,000[.]" The Background commentary makes clear that the value of the benefit "to be received" is the required measure when it is greater than the amount of the bribe:
 
 
 25
 In determining the net value of the benefit received or to be received, the value of the bribe is not deducted from the gross value of such benefit; the harm is the same regardless of value of the bribe paid to receive the benefit. Where the value of the bribe exceeds the value of the benefit or the value of the benefit cannot be determined, the value of the bribe is used because it is likely that the payer of such a bribe expected something in return that would be worth more than the value of the bribe. Moreover, for deterrence purposes, the punishment should be commensurate with the gain to the payer or the recipient of the bribe, whichever is higher.
 
 
 26
 Thus, both on its face and construed consistently with the commentary (as we must do), Sec. 2C1.1(b)(2)(A) indicates that $100,000--which was the tax savings benefit to be received by the victims--is the appropriate amount to carry forward to the fraud table in Sec. 2F1.1.
 
 
 27
 Admittedly this is a peculiar situation, because the "benefit" to be received is actually zero. But it is zero only because Brown was not really an IRS agent and Kyong Kim and Su Chin Kim did not really owe any taxes. They only thought they did. However, the guideline assumes that the person convicted of a Sec. 872 offense either was a government official or represented himself as a government official, and committed an act of extortion under pretense of the assumed office. Brown was able to perpetrate his fraud only by posing as an IRS agent and telling the victims they owed $100,000; otherwise, he could not have extorted $10,000 to save them $100,000, a trip to jail, their homes and businesses, and being deported. Because the only way Brown pulled the fraud off was by representing himself to be a public official, and extorting money from victims who thought they were cheating the government out of $100,000, he is in the same position vis-a-vis the victims as a real IRS agent who extorted money on the promise of a benefit which was never produced. For such circumstances, the guideline says that punishment should be measured by the value of the promise.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 All references are to the Guidelines in effect on November 1, 1992