**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Morris Stanley BROWNE,
Defendant-Appellant.**

No. 86–3049.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1987.

Decided Oct. 1, 1987.

Fred N. Weinhouse, Portland, Or., for plaintiff-appellee.

Paul S. Petterson, Portland, Or., for defendant-appellant.

Before SNEED and HALL, Circuit Judges, and STEPHENS,* District Court Judge.

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

**1.** Rule 609 provides:

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant, Morris Stanley Browne, timely appeals from his conviction and consecutive sentencing for armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and for carrying a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

On September 18, 1985, Browne was indicted by the grand jury for armed bank robbery, carrying a firearm during the commission of a crime of violence, and possession of a weapon by a felon. On September 19, 1985, Browne was arraigned and entered pleas of not guilty. Subsequently, the district court granted Browne's motion to sever the possession charge, and on December 3 through December 5, 1985, Browne was tried on the remaining two counts.

On December 5, after receiving detailed instructions from the court, the jury found Browne guilty of both armed bank robbery and carrying a firearm during the commission of a crime of violence. On March 3, 1986, the district court denied Browne's motion for a new trial and sentenced Browne to thirty-years imprisonment, twenty-five years for the armed bank robbery and five consecutive years for carrying a firearm during the commission of the robbery.

## II.

■ The first issue we address is whether Browne was entitled to a pretrial ruling on his Federal Rule of Evidence 609 motion to prevent evidence of his prior convictions for bank robbery and forgery from being used to impeach him at trial.[1] We conclude that he was not entitled to such a ruling.

(a) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if ... the

At Browne's request, the district court conducted a pretrial hearing on the issue, but specifically stated that it would make no ruling at that time. The court noted that it was inclined to allow evidence of the prior forgery to be used for impeachment purposes. The court also stated that, while it was inclined to exclude evidence of the prior bank robbery conviction, it would wait until Browne had testified before making a final ruling on its admissibility.

In *United States v. Kennedy*, 714 F.2d 968, 975 (9th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984), we held that where an advance ruling requires speculation by the district court concerning what the defendant will say while on the stand, it is well within the district court's discretion to refuse to issue a ruling prior to hearing the defendant's actual, in-court testimony. "The trial court has discretion to issue an advance ruling, but it need not do so, even if the refusal prevents the defendant from testifying in his own behalf." *Id.*

In this case, the court did not abuse its discretion by choosing to wait until Browne had testified before ruling on his motion. Indeed, we think that the court's refusal to issue a definite ruling prior to trial was the better course to take. The court's refusal allowed Browne to consider the possibility that his prior conviction would be used to impeach him should he decide to testify and to plan his testimony accordingly. Had Browne testified based on a preliminary ruling to exclude, he probably would have felt very prejudiced by the court's later decision to admit, and no doubt would have complained that his decision to testify was based on the preliminary ruling. Nevertheless, the district court's preliminary ruling would have been nonbinding; the district court would have been free to change its decision after hearing Browne's actual testimony. *See Luce v. United States*, 469 U.S. 38, 41–42, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.") (emphasis deleted). The district court was unsure of whether to exclude or admit evidence of Browne's prior convictions. In such a context, the better procedure is for the court to wait, as here, until it knows "the precise nature of the defendant's testimony." *Id.* at 41, 105 S.Ct. at 463; *see also id.* at 41 n. 5, 105 S.Ct. at 463 n. 5.

### III.

■ The next issue we address is whether the district court's ultimate decision to admit evidence of Browne's prior robbery conviction pursuant to Rule 609 was erroneous. We review a district court's decision to admit such evidence for an abuse of discretion. *United States v. Givens*, 767 F.2d 574, 579 (9th Cir.), *cert. denied*, 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985); *United States v. Bagley*, 772 F.2d 482, 487 (9th Cir.1985), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

Rule 609 provides that evidence of prior felony convictions is admissible for the purpose of attacking the credibility of a witness if the prejudicial effect of the evidence is outweighed by its probative value.[2] In *United States v. Cook*, 608 F.2d 1175, 1185 n. 8 (9th Cir.1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), *overruled on other grounds in Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), we outlined five factors which a district court should consider in balancing the probative value of evidence of a defendant's prior convictions against that evidence's prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the impor-

court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant....

(b) Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, whichever is the later date....

2. *See* note 1 *supra*.

tance of the defendant's testimony; and, (5) the centrality of the defendant's credibility. *See also Givens,* 767 F.2d at 579 n. 2; *Bagley,* 772 F.2d at 487. The government bears the burden of showing that the evidence's probative value substantially outweighs its prejudicial effect. *Id.*

Here, the district court applied each of the five factors and then ruled that the government had met its burden. We note first that the time factor tips the balance in favor of admissibility: Browne had been out of jail after serving his sentence for the prior bank robbery conviction for less than one year at the time of the Farwest Federal Bank robbery. By its terms, Rule 609 allows for admissibility of such a prior conviction even where the defendant has been released for up to ten years.

The district court found that the similarity of the crimes was the only *Cook* factor which weighed against admissibility. In *Bagley,* we held that the trial court abused its discretion in allowing evidence of two prior bank robberies to be admitted to impeach a defendant who was on trial for bank robbery. There, we dismissed the argument that evidence of the prior bank robberies had probative value which substantially outweighed the prejudice to Bagley, reasoning as follows:

> [W]here, as here, the prior conviction is sufficiently similar to the crime charged, there is substantial risk that all exculpatory evidence will be overcome by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again. Such a risk was clearly present in this case.
>
> Moreover, the government's need for the robbery convictions for impeachment purposes was nil. Most certainly, the government would have impeached Bagley's credibility by the introduction of his two forgery convictions. Thus, the only purpose served by the robbery convictions would be to plant in the minds of the jury the spectre that Bagley did it before and he did it again.

*Bagley,* 772 F.2d at 488.

Certainly, given *Bagley,* the similarity of Browne's prior conviction did counsel against admissibility. But a prior "bank robbery conviction [is] not inadmissible per se, merely because the offense involved was identical to that for which [the defendant] was on trial." *United States v. Oaxaca,* 569 F.2d 518, 527 (9th Cir.) (emphasis deleted), *cert. denied,* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978). If a prior bank robbery conviction serves a proper impeachment purpose, it, like evidence of other crimes, may be admissible in spite of its similarity to the offense at issue. *Id.*

Based on the importance of the defendant's testimony and the centrality of his credibility to the defense, the district court found our rulings admitting evidence of prior robberies in *Givens* and *Cook* more apropos than our ruling excluding such evidence in *Bagley.* So do we.

In *Givens,* the defendant was on trial for armed robbery. The government sought to admit evidence of Givens' prior robbery and assault with a deadly weapon convictions. Givens' "proposed testimony, in which he would have denied committing the offense, would have placed his credibility directly at issue." 767 F.2d at 580. We therefore held that the district court "reasonably ... concluded that the impeachment value of the prior convictions would outweigh their admitted prejudicial effect." *Id.* Givens' prior robbery conviction, being "probative of veracity," was properly admissible to impeach his proposed testimony. *Id.* (citing *Oaxaca,* 569 F.2d at 527); *see also United States v. Charmley,* 764 F.2d 675, 677 (9th Cir.1985) (upholding trial court's admission of prior convictions for both bank robbery and forgery in bank robbery case); *United States v. Lipscomb,* 702 F.2d 1049, 1053–62 (D.C.Cir.1983) (en banc) (discussing probative value of prior felony convictions), *overruled on other grounds in Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

In *Cook,* we held that the government should not be prevented from providing the jury with information which undercuts the defendant's trustworthiness as a witness.

608 F.2d at 1187. In that bank robbery case, we upheld the use of a prior bank robbery conviction to impeach a defendant who proposed to represent himself to be of stellar character. We stated that in such a context the government is not required to "sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." *Id.*

In this case, the district court relied on *Givens* and *Cook* to justify its finding that three of the relevant factors—the evidence's impeachment value, the importance of the defendant's testimony, and his credibility's centrality to the case—strongly tipped the balance in favor of admissibility. Its reliance was well-placed. Browne had testified that he did not commit the crime and that he had an alibi. No other witness could confirm or disprove the alleged alibi. Browne's credibility was certainly central to his defense. And since Browne had already admitted that he had been convicted of forgery, the government was left with only the prior bank robbery conviction with which to impeach him.

*Bagley* is certainly distinguishable. There, the court stated that "the record is devoid of any evidence that Bagley intended to misrepresent his character or to testify falsely as to his prior criminal record." 772 F.2d at 488. Moreover, the government had two prior unadmitted forgeries with which to impeach Bagley. *Id.* Here, Browne represented his character to be unimpeachable by testifying about his war record, his artistic nature, and his photographic memory, and by testifying that he gave his secretary money when she needed it, while openly admitting to his one, fifteen-year-old, prior forgery conviction. Browne also detailed an alibi for the day and time of the crime which hinged almost entirely on his credibility. Since the government was left with no avenue of impeachment other than use of the prior bank robbery conviction, the jury was properly allowed to consider it. *Cf. Oaxaca,* 569 F.2d at 527 ("in light of [defendant's] alibi defense" his credibility "was a key issue in the case" and the prior similar convictions were properly held admissible).

Moreover, the government did not overemphasize Browne's prior convictions. In fact, the admissions elicited from Browne by his attorney on direct examination constituted the only evidence of his prior convictions for forgery and bank robbery. Additionally, the district court gave the jury a limiting instruction, informing them that they should only consider Browne's prior conviction for impeachment purposes. In this context, we cannot say that the court abused its discretion in admitting such evidence.

### IV.

■ Browne's next contention is that the district court erred in allowing the in-court identification of him by Romelle Ward, the bank manager. We review admission of in-court identification testimony for an abuse of discretion. *United States v. Domina,* 784 F.2d 1361, 1369 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). Unless the procedure for identification was so " 'unnecessarily suggestive and conducive to irreparable misidentification' as to amount to a denial of due process of law," the district court did not abuse its discretion. *United States v. Williams,* 436 F.2d 1166, 1168–69 (9th Cir.1970) (quoting *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971); *see Domina,* 784 F.2d at 1369.

Ward's in-court identification of Browne was based on her unobstructed viewing of Browne for about one minute during the robbery and her review of the bank's surveillance photographs prior to the trial. Ward testified that as a bank officer she was trained to observe robbers carefully and that she had done so in this case. The lighting in the bank was excellent and Ward was positive that Browne was the robber.

Incredibly, Browne objects to Ward's pretrial viewing of the bank surveillance photographs—photographs which admittedly show the actual robber at the time that

Ward was looking at him. As we have pointed out at least twice before:

"Little possibility of misidentification arises from the use of photographs depicting 'the likeness not of some possible suspect in the police files, but of the [person] who actually committed the robbery.'

... [A]ny resemblance between the person[ ] in the photographs and the defendant[ ] not only was not impermissibly suggestive, but, in fact was highly probative."

*United States v. Monks*, 774 F.2d 945, 957 (9th Cir.1985) (citation omitted) (quoting *United States v. Stubblefield*, 621 F.2d 980, 983 (9th Cir.1980)); *see also United States v. Portillo*, 633 F.2d 1313, 1324 (9th Cir.1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *Domina*, 784 F.2d at 1369 (there, as here, "the jury had surveillance photos of the ... robber to assist in evaluating the reliability of the identification testimony").

The district court did not abuse its discretion by allowing Ward's in-court identification of Browne.

## V.

■ Browne contends that his conviction must be vacated because the government violated the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to release a report prepared prior to trial by Portland police officer Dirk Anderson. This report contained descriptions of the robber's clothing and revolver which differed slightly from the testimony of some of the witnesses. In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97. We review the record for such violations de novo. *United States v. Lehman*, 792 F.2d 899, 901 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). Reversal, however, is warranted only where the government fails, upon defend-

ant's request, to release material evidence and that evidence's suppression can be said to have denied the defendant a fair trial. *United States v. Bagley*, 473 U.S. 667, 675–78, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Id.* at 682, 105 S.Ct. at 3384; *id.* at 685, 105 S.Ct. at 3385 (concurring opinion).

In *United States v. Davenport*, 753 F.2d 1460 (9th Cir.1985), we held that "[d]isclosure [of exculpatory evidence], to escape the *Brady* sanction, must be made at a time when the disclosure would be of value to the accused." *Id.* at 1462. We found that the government's delay in releasing relevant information in *Davenport* did not constitute a due process violation because the defendant had access to the exculpatory evidence from the outset of the trial and was able to employ it in cross-examining the relevant witness. *Id.* Here, the disclosure of Anderson's report, though tardy, was still "of value" to Browne. While it is true that the government did not release the Anderson report to Browne until after several witnesses had testified, the evidence was not withheld from Browne throughout the entire trial. The government apparently first became aware of the report during trial, and proceeded to immediately acquire it for Browne's attorney upon his initial request.

Moreover, Browne made "effective use" of the police report to extrinsically impeach the prosecution's key witnesses. *See Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380 (indicating that we must examine whether disclosure of the evidence and its effective use would have made "the difference between conviction and acquittal"); *cf. Bagley v. Lumpkin*, 798 F.2d 1297, 1300–02 (9th Cir.1986) (applying *Bagley* rules on remand of that case from the Supreme Court).

Given the overwhelming weight of the evidence against Browne, and the jury's verdict of conviction in spite of his attorney's effective use of the report to extrinsi-

cally impeach the prior witnesses' testimony, there does not seem to be a reasonable likelihood that the government's temporary suppression of the requested evidence—if that is what it in fact did—had a material effect on the verdict. "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381. The jury's verdict is not in the least undermined by the government's slightly tardy disclosure of the Anderson report.

## VI.

■ Browne contends that the district court erred in admitting the blue barreled gun into evidence. We review evidentiary rulings for an abuse of discretion. *United States v. Harris*, 792 F.2d 866, 868 (9th Cir.1986). To determine whether a district court abused its discretion, we evaluate whether the court used the relevant factors in arriving at its decision and whether in doing so it made a clear error in its judgment. *Id.*

Here, key prosecution witnesses linked the gun in question to the robbery—even though there was some disagreement about whether the gun had the same colored barrel at the time of the robbery. Moreover, there was credible testimony that Browne stated that "the gun" used in the robbery was in the trunk. Based on this evidence and the certainty with which the witnesses identified the gun at trial—as compared to their admitted anxiety in giving their statements right after the robbery, we think that the district court properly left the issue of whether this gun was "the gun" for the jury to resolve. The jury could have reasonably believed the statements at trial and discounted any discrepancy in the statements made right after the robbery. The district court did not abuse its discretion by admitting the gun into evidence.

## VII.

■ Browne contends that the government's vouching for one of its witness'

testimony entitles him to a new trial. We review such instances of prosecutorial vouching for harmless error. *United States v. McKoy*, 771 F.2d 1207, 1212 (9th Cir.1985). Reversal is warranted only if "it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial." *Id.; see generally United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

While questioning the government's primary rebuttal witness, James Needs, who was then serving a sentence for an unrelated offense, the prosecutor asked him if it was his understanding that the government was going to write a letter to Needs' sentencing judge to inform the judge that Needs had testified truthfully as a witness. The defense promptly objected, the court sustained the objection, the prosecutor heeded the court's ruling by attempting to clear up the problem, and the court later gave a cautionary instruction to the jury, advising them of the error and telling them to disregard the prosecutor's "personal opinion as to the truthfulness of the testimony" of Needs. Moreover, the court also instructed the jury on the possibility that Needs' testimony "may have been influenced by the receipt of benefits from the Government." We find these procedures sufficient to affirm the district court's decision not to invoke the drastic remedy of declaring a mistrial. *Cf. United States v. McCown*, 711 F.2d 1441, 1451 (9th Cir.1983) ("trial judge's instructions to the jury were sufficient to correct any error" in prosecutor's bolstering of witness' credibility by discussing possibility of harsher sentencing should he testify untruthfully).

## VIII.

■ Finally, Browne contends that the district court erred in giving him consecutive sentences for armed bank robbery, in violation of section 2113(a) and (d), and for carrying a firearm during the commission of a crime of violence, in violation of section 924(c). Only in exceptional cases will we reverse a district court's decision to mete out a sentence within the maximum allowed by statute. *United States v.*

*Barker,* 771 F.2d 1362, 1364 (9th Cir.1985). In order to reverse for resentencing, the record must reveal that the sentencing court refused to exercise or exceeded the bounds of its almost absolute discretion. *Id.* Our review is limited to making certain that the district court did not so abuse or abdicate its discretion. *Id.* at 1365.

Browne's argument is rooted in the mistaken notion that his sentence violates the fifth amendment's protection against double jeopardy. We rejected this same contention in *United States v. Blocker,* 802 F.2d 1102, 1104–05 (9th Cir.1986), and in *United States v. Gonzalez,* 800 F.2d 895, 897–98 (9th Cir.1986). "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). When Congress amended section 924(c) in 1984, it expressly intended to authorize an additional, cumulative, sentence for persons who also violate section 2113. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 312–13 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3490–91; *see also Blocker,* 802 F.2d at 1105; *Gonzalez,* 800 F.2d at 898. The district court was within its discretion in sentencing Browne to cumulative sentences for his offenses.

## IX.

Having found no reversible error in the district court's rulings nor any unfairness in Browne's trial, we AFFIRM the jury's verdicts of conviction and the sentences imposed by the court.