**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHAD HENRY JONES,

    Defendant - Appellant.

No. 24-6189

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:23-CR-00163-G-1)**

---

Kiefer M. Rose, Research & Writing Specialist (Jeffrey M. Byers, Federal Public Defender, with him on the briefs), Office of Federal Public Defender, Western District of Oklahoma, Oklahoma City, Oklahoma, for Defendant-Appellant.

David R. Nichols, Jr., Assistant United States Attorney (Robert J. Troester, United States Attorney, with him on the brief), Office of United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **TYMKOVICH**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Chad Henry Jones was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Jones had two prior felonies: (1) distribution of a controlled substance (marijuana); and (2) felon in possession of a firearm—the same

crime on appeal.  Before trial, Jones stipulated to his status as a felon and that the gun in question traveled interstate.  But Jones disputed that he possessed the gun, which was found within arm's reach of where he was arrested.

Jones testified in his defense.  After describing the events leading up to his arrest, defense counsel asked Jones about his criminal history—despite his stipulation that he was a felon.  Defense counsel asked Jones if he had been previously convicted of a felony, and whether that felony was for distribution of a controlled substance.  Jones responded, "yes," and added, "not to excuse it, but it [was for] marijuana."  The government interjected and, at a sidebar, asked the court for permission to cross-examine Jones about his prior conviction for being a felon in possession of a firearm.  The government wanted to introduce the prior conviction evidence to impeach the implication that Jones was trying to minimize his criminal history and enhance his credibility before the jury.  The court granted the government's request.  So, during cross-examination, the government asked Jones whether he had been previously convicted of being a felon-in-possession of a firearm, and whether he knew that he was not supposed to own a gun.  Jones responded affirmatively to both questions.  The district court issued a limiting instruction, directing the jury to only consider Jones's prior felon-in-possession conviction for impeachment purposes only.

Jones argues on appeal that the district court abused its discretion by admitting his prior felon-in-possession conviction for impeachment purposes.

We **AFFIRM**.  Although admitting a past conviction for the same crime charged can be prejudicial, the impeachment—and probative—value of the

2

conviction increased once Jones gave a misleading impression of his criminal background and put his credibility at issue. Jones was also the only witness at trial who could refute the government's theory of the case. Given the importance of his testimony and credibility, the admission of the prior conviction—which was the only other relevant felony conviction under Rule 609—was not an abuse of discretion.

## I.    Background

### A.    Jones's Arrest

Two Oklahoma City police officers received a stolen-vehicle alert for a white Nissan Pathfinder. The officers found the car, which was being driven by Chad Jones and who in turn was accompanied by a male passenger. Once the officers confirmed the stolen vehicle, they initiated a traffic stop. While Jones initially appeared to slow down, he suddenly accelerated, leading the officers on a hot pursuit through major streets and residential neighborhoods. All this occurred during the night when it was lightly raining. Finally, Jones pulled into an apartment complex, exited the car, and ran towards an alleyway between apartment buildings that was littered with debris and trash. Jones's passenger remained in the car.

The officers pulled up behind the Pathfinder. One of the officers pursued Jones by foot, while the other officer joined the pursuit after confirming that Jones's passenger did not pose any threats.

Jones attempted to climb over a fence but was apprehended within minutes. After he was handcuffed, Jones blurted out, without prompting, "[he] had a gun." R., Vol. III at 71, 94. The officers did not see Jones carry a gun during their pursuit, but

they understood this comment to be referring to the passenger.  While one officer brought Jones back to the police vehicle, the other officer stayed behind, searched the area, and found a loaded pistol on the ground.  The gun was found at arm's length from where Jones was arrested.  Although the ground was wet because of the rain, the officer observed that the gun was dry and not covered with debris or trash.  The officer inferred that the gun must have been recently discarded.  Additional police officers arrived on the scene and searched the passenger, as well as the Pathfinder. Contrary to Jones's statement, they found no gun or contraband on the passenger, nor in the vehicle.

### B.   Jones's Trial

Jones was indicted with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He had two prior felony convictions: In 2012, he was convicted for distribution of marijuana, a controlled substance, and in 2017, he pleaded guilty to being a felon in possession of a firearm.

In this case, Jones stipulated that he was a felon and that the firearm traveled interstate.  The only issue was whether he "knowingly possessed the firearm."  Jones claimed that he did not.

Before trial, the government filed a notice of intent to admit Jones's prior felon-in-possession conviction under Federal Rule of Evidence 404(b).[1]  Because

---

[1] Although Rule 404(b)(1) prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Rule 404(b)(2) allows the use of such evidence for other purposes, "such as proving motive, opportunity,

Jones planned to dispute that he knowingly possessed the gun, the government

wanted to use the prior conviction to show "knowledge, intent, and lack of accident."

The court denied the motion. According to the district court, the prejudicial effect of

using a conviction for the same crime being charged substantially outweighed its

probative value under Rule 403.[2]

But all this changed at Jones's two-day trial. After the two officers testified

about the events leading up to the arrest, Jones himself took the stand. Among other

things, Jones explained what he was doing that night, his relationship to the

passenger, and the fact that he fled from the police because he was scared.[3] He also

admitted that he lied when he told the officers that the passenger owned a gun, but

---

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of
accident."

[2] Rule 403 states that "[t]he court may exclude relevant evidence if its
probative value is substantially outweighed by a danger of one or more of the
following: unfair prejudice, confusing the issues, misleading the jury, undue delay,
wasting time, or needlessly presenting cumulative evidence."

[3] Jones testified that he was trying to fix his car outside his friend's apartment
on the night of his arrest when he met the passenger. He had no prior relationship
with the passenger. Apparently, the passenger was driving by when he noticed Jones
struggling to fix his car. The passenger told Jones that he knew someone who lived
close by and might have a spare battery for him to use. Jones got into the passenger's
Nissan Pathfinder. But as the two individuals were heading to pick up the battery,
the passenger—who was driving the car at the time—told Jones that he was not
feeling well and that his vision was blurry. He pulled into a parking lot and asked if
Jones could take the wheel. Jones agreed, and it was only soon after when the police
initiated a traffic stop. Jones testified that he did not commit any traffic infractions,
so he asked the passenger "what . . . he [had] going on with [this] truck." R., Vol. III
at 90. According to Jones, the passenger responded that he did not know what Jones
was talking about, and he "start[ed] slouching down in his seat." *Id.* Jones then
accelerated, leading the police on a hot pursuit.

still maintained that the gun at issue was not his.  Jones's lawyer then asked about his criminal history:

> Defense Counsel: You have a felony conviction from Oklahoma County court, correct?
>
> Jones: Yes.
>
> Defense Counsel: A distribution of controlled dangerous substance, correct?
>
> Jones: Yes.  Not to excuse it, but it's marijuana.
>
> Defense Counsel: And that's back from 2012, correct?
>
> Jones: Yes.

R., Vol. III. at 95.

The government interjected and asked for a sidebar.  While the government acknowledged that the district court previously denied the use of Jones's prior felon-in-possession conviction under Rule 404(b), the government argued that Jones's testimony at trial now made that conviction more probative for impeachment purposes.  According to the government, Jones was trying to minimize his criminal history by testifying that his prior conviction was only for marijuana, which therefore provided an "incomplete picture" of his criminal background.  The defense disagreed, and the court acknowledged both parties' arguments.  The court noted that it would decide whether to admit the prior felon-in-possession conviction when it came time for the government to cross-examine Jones.

That time came.  After asking Jones about the events leading up to his arrest, the government again asked for a sidebar, requesting the court to allow cross-

examination of Jones about his prior felon-in-possession conviction to impeach him. After much discussion, the court granted the government's request over the defense's objection. The court found that Jones's testimony about how his prior felony conviction was "just for marijuana" increased the relevance of the prior felon-in-possession conviction in 2017. *Id.* at 109–10. The court held that the probative value of "asking what the 2017 conviction was for and a simple description of that [conviction]" would "outweigh[] the prejudicial effect." *Id.*

> The government asked three pointed questions about the prior conviction:
>
>> The government: Mr. Jones, Ms. Blumert (Defense Counsel) also asked you about some of your criminal history. Were you also convicted of felon in possession of a firearm in Oklahoma County Case CF-2017-3287?
>>
>> Jones: Yes. Yes.
>>
>> The government: And by your stipulation, I gather you were aware of that conviction, correct?
>>
>> Jones: Yes.
>>
>> The government: And by virtue of that, you knew that you weren't supposed to have firearms, correct?
>>
>> Jones: Yes.

*Id.* at 110. The government then moved on to another line of questioning.

At closing, defense counsel made clear that the jury should only consider the prior felon-in-possession conviction for impeachment purposes. The district court also gave limiting instructions to that effect. The instruction stated that the prior "conviction has been brought to your attention only because you may wish to

7

consider it when you decide, as with any witness, *how much of his testimony you will believe in this trial*." *Id.* at 38 (emphasis added). It stressed, "[t]he fact that the defendant has been convicted of another crime does not mean that he committed the crime charged in this case, and you must not use his prior conviction as proof of the crime charged in this case."[4] *Id.*

The jury convicted Jones of being a felon in possession of a firearm in violation of § 922(g)(1).

## II.     Discussion

Jones raises two challenges on appeal: (1) whether the district court abused its discretion in admitting his prior felon-in-possession conviction, and (2) whether there was sufficient evidence to sustain his conviction.

### A.     *Rule 609 and Rule 404(b)*

To start, the parties initially disagreed about which evidentiary rule is at issue. The government argued in briefing that Jones's prior conviction was admissible under Rule 404(b) but then conceded at oral argument that Rule 609 is the relevant

---

[4] The limiting instruction in its entirety read: "You have heard evidence that the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years. This conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much of his testimony you will believe in this trial. The fact that the defendant has been convicted of another crime does not mean that he committed the crime charged in this case, and you must not use his prior conviction as proof of the crime charged in this case. You may find him guilty of the crime charged here only if the government has proved beyond a reasonable doubt that he committed it." R., Vol. I at 38.

rule. Oral Arg. Audio at 25:45–27:04. The parties' disagreement is immaterial. As we explain below, both rules are adequate to admit Jones's prior conviction.

### B.     Rule 609

Rule 609 concerns impeachment evidence. Subject to certain restrictions, Rule 609 allows the admission of a witness's prior felony conviction to impeach or "attack[] a witness's character for truthfulness." FED. R. EVID. 609(a). If the defendant is a witness in his own criminal case, as was the case here, the evidence of a prior felony conviction for impeachment purposes "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect to that defendant." FED. R. EVID. 609(a)(1)(B).[5]

---

[5] Rule 609 states in relevant part:

(a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

    (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

        (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

        (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

    (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

"A district court has broad discretion to determine the admissibility of evidence, and we review the district court's ruling for abuse of discretion." *United States v. Merritt*, 961 F.3d 1105, 1111 (10th Cir. 2020) (citations omitted). "Under this standard, we will not disturb a trial court's decision unless we have a definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (cleaned up). "Evidentiary rulings may constitute an abuse of discretion only if based on an erroneous conclusion of law, a clearly erroneous finding of fact or a manifest error in judgment," *United States v. Harper*, 118 F.4th 1288, 1296 (10th Cir. 2024), or if the district court's ruling is "arbitrary, capricious or whimsical." *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (citation omitted).

Keeping in mind this deference owed to the district court, our cases instruct us to consider five factors in deciding whether evidence was properly admitted under Rule 609(a)(1): "(1) the impeachment value of the defendant's prior crimes; (2) the dates of the convictions and the defendant's subsequent history; (3) the similarity between the past crime and charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility at trial." *United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014). "The well-settled rule in this circuit is that the permissible scope of cross-examination under Rule 609 extends to the essential facts of convictions, the nature of the crimes, and the punishment." *Id.*

10

### 1.  Impeachment Value of Defendant's Prior Crime

The impeachment value of Jones's prior conviction favors admissibility.  To be sure, deceit or dishonesty is not one of the elements for a felon-in-possession charge.  Thus, relying on a Third Circuit case, *United States v. Caldwell*, 760 F.3d 267, 289 (3d Cir. 2014), Jones argues that, because "unlawful firearms convictions do not, by their nature, imply a dishonest act," they have low impeachment value.[6]

But Rule 609 is not limited to crimes of deceit or dishonesty, and even if a felon-in-possession conviction may have low impeachment value in the abstract, it can gain probative value in cases like this one where the defendant puts his criminal history at issue and attempts to minimize it.  At trial, Jones tried to downplay his criminal history by testifying that his prior felony conviction was only for marijuana, even though the exact details of that conviction were not explored.  Jones contends that admitting to marijuana distribution does not bolster his character for truthfulness,

---

[6] Jones relies on *Caldwell* throughout his brief to argue that the district court erred in admitting the prior conviction evidence under Rule 609.  While *Caldwell* is relevant to our discussion, its procedural posture differs from this case in a material way.  In *Caldwell*, the Third Circuit was not reviewing the district court's decision to admit the prior conviction evidence for an abuse of discretion.  Rather, the district court there admitted the evidence under Rule 404(b) and did not reach the government's alternative argument to admit the prior conviction under Rule 609.  *See Caldwell*, 760 F.3d at 285 (noting that the government "alternatively argue[d] that the evidence of Caldwell's prior convictions was admissible for impeachment purposes under Federal Rule of Evidence 609(a)(1)(B)" but "the District Court found the evidence admissible under Rule 404(b), [and] . . . did not reach the Government's alternative argument").  That distinction is critical.  Here, we are not reviewing whether Jones's prior conviction is admissible under Rule 609 in the first instance.  Rather, the district court took the first pass, and we are only considering whether the district court's decision was an abuse of discretion.

11

but that is beside the point. Jones was downplaying his criminal record to stress that he is not a serious criminal offender, which in turn was meant to enhance his standing and bolster his trustworthiness before the jury. "[T]he government is not required to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." *United States v. Browne*, 829 F.2d 760, 764 (9th Cir. 1987) (internal quotation marks omitted).

The government also did not have alternative convictions that it could use to impeach Jones under Rule 609. The felon-in-possession conviction was the only relevant one for Jones within the past ten years, and therefore the government was not intentionally trying to use the most prejudicial form of evidence for impeachment. "Since the government was left with no avenue of impeachment other than use of the [felon-in-possession] conviction, the jury was properly allowed to consider it." *Id.* at 764.

### 2. The Importance of Defendant's Testimony and the Centrality of Defendant's Credibility at Trial

Jones's testimony was also critical at trial, as was his credibility. These factors favor admission.

The trial consisted of four witnesses: (1) the two police officers, (2) Jones, and (3) the DNA forensics expert. Only three of these witnesses—the officers and Jones—were present on the night of the arrest, so Jones's testimony was critical in helping the jury decide whether the gun belonged to Jones. *See United States v.*

*Smith*, 131 F.3d 685, 687 (7th Cir. 1997) ("The district court recognized that the two major witnesses to this fact would be the teller and the defendant; therefore, the defendant's testimony was a crucial part of the case."). "Where a case is reduced to a swearing contest between witnesses, the probative value of conviction evidence is increased." 28 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 6134 (2d ed. 2025 update). Jones's testimony, which amounted to a "deni[al] [of] committing the offense . . . placed his credibility directly at issue," *Browne*, 829 F.2d at 763, so the government's use of impeachment evidence—even if it were a conviction for the same crime—was permissible. *See Smith*, 131 F.3d at 687 (finding that admitting prior conviction evidence for a similar crime being charged was permissible because the defendant's testimony "directly contradicted that of the bank teller," which made "his credibility . . . a central issue").

Notably, Jones does not dispute that his testimony was essential to refute the government's theory of the case, and that he was the only available witness who could do so. But Jones argues that this cuts against admitting the prior conviction. Citing *Caldwell*, Jones argues that if the defendant's testimony is critical, courts should strongly consider whether to admit prior conviction evidence because it can prevent the defendant from testifying in the first place. *See* 760 F.3d at 287 ("If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying.").

13

This argument is not persuasive in this case. Here, it was Jones who brought his criminal history into focus by attempting to minimize it on direct examination. Jones put his criminal history at issue even though he did not have to, and as already explained, the government is not required to sit back and allow the defendant to give a misleading picture of his credibility. *Caldwell* is distinguishable, since there, the defendant did not open the door to impeachment evidence by minimizing his criminal history. Rather, the government in *Caldwell* tried to admit the prior conviction evidence on its own without prompting, and the court found that this would be overly prejudicial. 760 F.3d at 273, 285–89. Not so here. The government was merely correcting the incomplete picture that Jones portrayed. Given the importance of Jones's testimony and therefore, his credibility, it was not an abuse of discretion to allow the government to admit the prior conviction.[7] *See Browne*, 829 F.2d at 763–64; *Smith*, 131 F.3d at 687.

Jones also argues that it makes little sense that his prior conviction, which was excluded under Rule 403 before trial, would be admissible under the more stringent Rule 609 standard. But the district court explained that Jones's testimony at trial

---

[7] Jones also argues that even if his credibility was material, the use of his prior conviction was improper because a felon-in-possession conviction has little to do with credibility. This argument merely rehashes the same claims made under the impeachment value of the prior conviction, and therefore they fail for the same reasons. Jones contends that the government was only using the prior conviction to make him seem like a violent person and was not concerned with his credibility. But the record does not support that view. The government sought to introduce this evidence to impeach him and provide a more complete picture of his credibility only after Jones put it at issue.

changed its view on the relevance and probative value of the prior conviction.  By attempting to minimize his criminal history, Jones made his prior felon-in-possession conviction all the more relevant and probative in assessing credibility.

### 3.    *Similarity of the Crimes Charged and Date of Conviction*

Jones's strongest point is that the prior conviction evidence is identical to the present crime being charged.  Admitting a prior conviction for the same crime that is being tried is prejudicial because it can give way to improper propensity evidence. *See* 28 WRIGHT & MILLER § 6134 (2d ed. 2025 update) ("[T]he danger of unfair prejudice is enhanced if the witness is the accused and the crime was similar to the crime now charged, since this increases the risk that the jury will draw an impermissible inference").

Even so, any potential prejudice was lessened here for two reasons.  First, the government's questioning about the prior conviction was limited.  The government only asked about the "essential facts of [the] conviction[]." *Smalls*, 752 F.3d at 1240. It did not probe into the details of the conviction but rather quickly moved to another line of questioning.  *See Browne*, 829 F.2d at 764 ("The government did not overemphasize [the defendant's] prior convictions," which favors admitting the evidence).  Second, the district court gave clear limiting instructions to the jury, directing them to consider the prior conviction for impeachment purposes only. Since we "assume that juries follow their instructions," *United States v. Black*, 369 F.3d 1171, 1178 (10th Cir. 2004), this, too, reduced the prejudicial effect of the prior conviction evidence.  *See Smith*, 131 F.3d at 687 (although the "prior convictions

15

were similar to the crime at issue in [the] case," the district court did not abuse its discretion in admitting the evidence in part because it "gave the jury a clear limiting instruction, directing the jury to consider the prior conviction only for impeachment purposes"); *see also Browne*, 829 F.2d at 764 ("[T]he district court gave the jury a limiting instruction, informing them that they should only consider [the defendant's] prior conviction for impeachment purposes. In this context, we cannot say that the court abused its discretion in admitting such evidence.").

Finally, because the prior conviction is less than ten years old, it is relevant under Rule 609. *See* Fed R. Evid. 609(b); *Smith*, 131 F.3d at 687 (the prior conviction was relevant because it fell "within the ten-year time limit established by the Rules. FED. R. EVID. 609(b)").

### 4.    *On Balance*

All told, the district court did not abuse its discretion in admitting the prior conviction evidence under Rule 609. Although the similarity of the prior conviction to the crime charged supports exclusion, the district court reasonably found that this alone does not overcome the other factors that suggest admission was proper. *See, e.g.*, *Perkins*, 937 F.2d at 1406 (admission of a prior bank robbery conviction was not an abuse of discretion even though "it was the same crime as the charged offense" because the conviction "serve[d] a proper impeachment purpose" and "the defendant's testimony and credibility [were] central to the case"). The district court's decision to admit the prior conviction was not "arbitrary, capricious or whimsical." *Mares*, 441 F.3d at 1156 (citation omitted).

16

### C.    *Rule 404(b)*

Rule 404(b) also provides an alternative basis to admit Jones's prior conviction. As Jones acknowledges, an appellate court "may affirm the rulings on admission of evidence if that evidence is admissible under any of the Federal Rules of Evidence; [it] is not bound by the evidentiary basis relied upon by the trial court for the admission of the challenged evidence." *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1331 (10th Cir. 1984). Moreover, the government argued in its opening brief that Rule 404(b) applied. Thus, even if the record shows that the district court admitted Jones's prior conviction under Rule 609, Rule 404(b) can—and does—supply another ground to admit the prior conviction evidence.

Rule 404(b) states, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b). Such evidence, however, can be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Thus, when determining whether evidence passes Rule 404(b) scrutiny, the court considers: "(1) whether the evidence [was] offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests." *Mares*, 441 F.3d at 1156. "The list of proper purposes [under Rule 404(b)] is illustrative, not exhaustive, and Rule 404(b) is considered to be 'an inclusive rule, admitting all evidence of other crimes or acts

17

except that which tends to prove *only* criminal disposition.'" *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (citation omitted).

These relevant factors show that Jones's prior conviction is admissible under Rule 404(b).[8] To start, the first two factors support admissibility. The government argues that it was using the prior felon-in-possession conviction to show "knowledge, intent, and lack of accident," which are proper purposes under Rule 404(b), and go directly to the only disputed element of the charged offense: whether Jones "knowingly possessed" the firearm.[9] This also makes the prior conviction relevant and "probative to demonstrate that [Jones] knowingly possessed the firearm." *United States v. Moran*, 503 F.3d 1135, 1144 (10th Cir. 2007) (internal quotation marks omitted). "Because the prior conviction required the same knowledge, evidence of the conviction had a tendency to make the existence of [Jones's] knowledge of the [gun] in the present case more probable . . . than it would be without the evidence."[10] *Id.* (internal quotation marks and citation omitted).

---

[8] The fourth factor—*i.e.*, whether the district court gave a limiting instruction at the defendant's request—is irrelevant here, since the record shows that the district court admitted Jones's prior conviction under Rule 609, and therefore Jones had no reason to ask for such limiting instruction.

[9] Jones argues that the government used the prior conviction to paint him in the "worst light possible," which is an improper purpose. Aplt. Reply at 10. But as explained above, the record does not support that view. Moreover, as far as Rule 404(b) goes, the government contends that it was aiming to use the prior conviction evidence to refute whether Jones "knowingly possessed" the firearm. "Knowledge" is a proper purpose.

[10] Jones's attempt to distinguish *Moran* is unconvincing. According to Jones, *Moran* is distinguishable because the defendant there had exclusive possession of the

18

The third factor also favors admissibility because the probative value of this evidence is "not substantially outweighed by its prejudicial effect." *Mares*, 441 F.3d at 1156. Here, the court must engage in a Rule 403 analysis, *Moran*, 503 F.3d at 1145, which requires considering whether the probative value of the relevant evidence is "substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. In this case, Rule 403 is satisfied. Although admitting a prior conviction for the same charged offense risks improper propensity inferences, we have held in an identical case that such risks do not substantially outweigh the probative value of admitting the conviction for a proper purpose. *See Moran*, 503 F.3d at 1145–46. Jones "denied he had knowledge of the [gun], [so] the prior conviction had clear probative value in rebutting this defense." *Id.* If the prior conviction evidence "is admitted for a proper purpose and is relevant, it may be admissible even though it has the potential impermissible side effect of allowing the jury to infer criminal propensity." *Id.* at 1145 (internal quotation marks and citation omitted). That is the case here.

---

firearm and the firearm was plainly visible, neither of which is true here. But exclusive possession and plain visibility of the gun did not play a part in *Moran*'s Rule 404(b) analysis. Rather, the *Moran* court held that the prior felon-in-possession conviction was probative because it contained the same "knowledge" element as the currently charged offense, which enabled a specific inference that "a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense." *Moran*, 503 F.3d at 1145.

In conclusion, Rule 404(b) supplies another ground to admit Jones's prior conviction.

### D.      Harmless Error

Still, even if Jones is right in that the district court erred in admitting his prior conviction evidence, that error was harmless. "A non-constitutional error, such as the admission or exclusion of impeachment evidence, is subject to harmless error analysis." *United States v. Gould*, 672 F.3d 930, 941 (10th Cir. 2012). And a "non-constitutional error is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Id.* (internal quotation marks and citation omitted). "The government bears the burden of showing the error was harmless by a preponderance of the evidence," which it often does "by demonstrating the evidence of guilt is overwhelming." *United States v. Jean-Pierre*, 1 F.4th 836, 843 (10th Cir. 2021) (internal quotation marks and citations omitted).

The government has carried its burden. The evidence at trial included: (1) Jones's flight from police, (2) the location of the gun, which was found at arm's length from where Jones was arrested, (3) Jones's spontaneous and admittedly false statement that the passenger had a gun, and (4) the officers' observation that the gun seemed recently discarded because it was dry, rust-free, and not covered in debris—even though it was raining that night and found in an alleyway littered with debris and trash. The officers also testified that they do not "frequently find" guns lying or abandoned on the ground. R., Vol. III at 46. The evidence suggests that, although Jones did not have exclusive control over the alleyway in which he was arrested, he

likely brought the gun from the car to the alleyway and discarded it when the police closed in.

Jones argues that the government's evidence is circumstantial and conflicting, but neither of these objections has merit. First, nothing is wrong with establishing a case by the weight of circumstantial evidence, and Jones cites no authority to the contrary. The only question is whether the circumstantial evidence shows by a preponderance that Jones knowingly possessed the gun. Second, Jones fails to show where the conflict in the evidence lies. All the evidence above was undisputed except for Jones's possession.

Jones points to the jury's questions to argue that introduction of his prior conviction evidence was not harmless. The jury asked several questions, including, "Can we get a copy of [the] passenger's statement," "What is [Jones's] occupation," "Did passenger's [and] [Jones]'s statement[s] match," and "Do we have testimony of friend (of [Jones])—from apartment [and the] house he went to?" R., Vol. I at 61. According to Jones, the jury's questions suggest that "this case boiled down to whether the jury believed Mr. Jones," and these questions suggested that the prior conviction affected "Jones's believability." Aplt. Reply at 16. But this argument does not help him. If the jury's questions show that the prior conviction evidence affected "Jones's believability," this means that the jury properly considered the prior conviction for impeachment purposes and not as improper propensity evidence. This argument cuts against Jones and shows that any alleged error in admitting the prior conviction was in fact harmless.

Accordingly, even if the district court erred in admitting the prior conviction evidence, that error was harmless. The government supplied enough evidence to show by a preponderance that Jones knowingly possessed the gun.

### E.    *Sufficiency of the Evidence*

Finally, Jones challenges whether there was sufficient evidence to sustain his conviction. Much of the arguments here overlap with the discussion on whether the district court committed a harmless error.

Although we "review de novo the sufficiency of the evidence," we view "all evidence and any reasonable inferences drawn therefrom in the light most favorable to the [government]." *United States v. Fernandez*, 24 F.4th 1321, 1326 (10th Cir. 2022). "Our review in this context is highly deferential," *United States v. Dowlin*, 408 F.3d 647, 657 (10th Cir. 2005), and "we owe considerable deference to the jury's verdict." *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011) (citation omitted). "We will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury, and we defer to the jury's assessment of a witness's credibility." *United States v. Flechs*, 98 F.4th 1235, 1243 (10th Cir. 2024) (cleaned up). In other words, "[w]e will reverse a conviction for insufficient evidence only when no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Fernandez*, 24 F.4th at 1326 (citation omitted). At bottom, "[o]ur restrictive standard of review for a sufficiency of the evidence question provides us with very little leeway." *Flechs*, 98 F.4th at 1243.

Jones's arguments in response to the government's evidence fail.  First, Jones tries to explain away his flight from police by stating that he was afraid that he might go to jail—even though he claimed that he did nothing wrong.  "But it is the jury's duty, not ours, to . . . judge witness credibility," *Fernandez*, 24 F.4th at 1327, and a reasonable juror could find that this is contradictory and fails to explain why he did not simply pull over.  Second, Jones makes several assertions, including that the DNA tests on the gun yielded inconclusive results, neither officer saw him with the gun, and the gun was found near an apartment complex where he did not live.  To be sure, all this may be true.  But given the weight of the circumstantial evidence that implicates his possession of the gun, Jones fails to show that no reasonable jury could have found him guilty nonetheless.  After all, the evidence "need not conclusively exclude every other reasonable hypothesis[,] and it need not negate all possibilities except guilt" to be sufficient.  *Flechs*, 98 F.4th at 1243.

Ultimately, given that our review is "highly deferential," and we view the evidence "in the light most favorable to the government," we cannot say that "no reasonable juror could have concluded, on the basis of the evidence presented, that the defendant was guilty of the crime charged."  *Dowlin*, 408 F.3d at 656–57.

## III.  Conclusion

For the reasons stated above, we affirm.